IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| LENZIE GILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO: CV-06-1151-MHT |
| | ) | |
| PROGRESSIVE DIRECT | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF UNDISPUTED FACTS

Comes now the defendant, Progressive Direct Insurance Company ("Progressive"), pursuant to Rule 56 of the Federal Rules of Civil Procedure, and submits the following undisputed facts in support of its motion for summary judgment.

1.     The plaintiff filed this lawsuit against Progressive alleging breach of contract and bad faith as a result of damage to an awning on his motor home on October 27, 2006. *Doc. 1.*

2.     Progressive admits that its policy of motor home insurance was in full force and effect at the time of the wind damage claim. *Doc. 2.* It provided comprehensive coverage. *Doc. 2.*

3.    Progressive's representative inspected the motor home on October 30, 2006. (Affidavit of Larry Lackey, ¶ 4). The estimated cost of the repairs was in the amount of $927.80. *Id.* Initially, Progressive did not make any payment because the cost of repairs did not exceed the policy deductible for comprehensive losses and the depreciation or betterment amount. *Id.* The awning was around 20 years old. *Id.*

4.    Gill never presented any documentation that the awning had been replaced. *Id.* at ¶ 6.

5.    Nevertheless, Progressive agreed on November 16, 2006 to pay the costs of repairs less the policy deductible (without any additional deduction for the betterment or depreciation amounts). *Id.* at ¶ 7. A settlement check in the amount of $427 was forwarded to the plaintiff but that settlement offer was rejected. *Id.* at ¶ 8. (See also, correspondence from plaintiff's attorney attached as exhibit "A").

6.    Progressive was required to make a deduction for betterment or depreciation under its policy. Progressive's policy states as follows:

> **INSURING AGREEMENT - AGREED VALUE COVERAGE**
>
> \* \* \*
>
> b.    For a loss other than a **total loss** to a **covered vehicle**, or for a **total loss** where the **agreed value** is not supported by proper documentation, **our** limit of liability is the lower of:

2

    (i)    the Value of the stolen or
damaged property at the time of the
**loss** reduced by:

    (a)    the applicable deductible as shown
on the **Declarations Page**; and

    (b)    its salvage value if **you** or the
**owner** pertaining to the salvage;

\* \* \*

(See, Progressive's policy attached as exhibit "B"; pp. 28, 29).

7.    The limits of liability portion of Progressive's policy states as follows:

**Limits of Liability**

\* \* \*

4.    Payments for **loss** is covered under this **Part IV**
are subject to the following provisions:

    a.    . . .

    b.    . . .

    c.    an adjustment for physical condition, which
may also be referred to as betterment, wear
and tear, or prior damage, will be made in
determining the Limits of Liability.  However,
this shall not apply to a **total loss** if the **cov-
ered vehicle** is covered by Total Loss
Replacement/Purchase Price Coverage or
Agreed Value Coverage;

(See, Progressive's policy attached as exhibit "B"; pp. 25, 26).

8.    Pursuant to Part IV of Progressive's policy concerning damage to a vehicle,

Progressive must make an adjustment for physical condition, betterment, wear and tear, or

prior damage.  (See, Progressive's policy attached as exhibit "B"; pp. 25, 26).  The policy

<u>requires</u> that this adjustment be made in determining the limits of liability.  *Id.*

9.    Progressive was within its contractual rights to make an adjustment for betterment in this case. *Id.*

                                    /s/ R. Larry Bradford
                                    R.  Larry  Bradford,  Attorney  for
                                    Defendant, Progressive Direct Insurance
                                    Company
                                    Attorney Bar Code: BRA039


                                    /s/ Shane T. Sears
                                    Shane T. Sears, Attorney for Defendant,
                                    Progressive Direct Insurance Company
                                    Attorney Bar Code: SEA026


OF COUNSEL:

Bradford & Sears, P.C.
2020 Canyon Road
Suite 100
Birmingham, AL 35216

## CERTIFICATE OF SERVICE

I hereby certify that I have this the 16th day of May, 2007, served a copy of the foregoing to all attorneys of record by placing a copy of same in the United States Mail, postage prepaid and properly addressed as follows:

Jerry M. Blevins, Esq.
Law Office of Jerry M. Blevins
Hillwood Office Center
2800 Zelda Road, Suite 200-3
Montgomery, AL 36106

/s/ Shane T. Sears
OF COUNSEL

STATE OF ALABAMA

JEFFERSON COUNTY

## <u>AFFIDAVIT OF LARRY LACKEY</u>

LARRY LACKEY being duly sworn, deposes and says under oath as follows:

1.    My name is Larry Lackey. I am over the age of nineteen (19) years and am competent to make this affidavit. It is based upon my personal knowledge and upon my review of Progressive Direct Insurance Company's ("Progressive") claims file prepared and maintained during the ordinary and regular course of its business.

2.    I am employed as a claims attorney for the defendant, Progressive.

3.    Lenzie Gill ("Gill") reported a wind-damage claim on October 28, 2006 for damage to an awning on his 1984 Jayco motor home.

4.    Progressive's representative, Derek Pannier, inspected the motor home on October 30, 2006. He determined that the cost of repairs would be in the amount of $927.80.

5.    However, no payment was due under the policy because Gill had a $500 comprehensive deductible and the depreciation or betterment. The awning appeared to be at least 20 years old.

6.    Gill claimed that he purchased a replacement awning in 2005. However, he never provided any documentation for the replacement awning to Progressive.

7.    Nevertheless, Progressive's representative, in the interest of compromise, agreed to waive the betterment deduction.

8.    Progressive mailed a payment check to Gill in the amount of $427.80. However, this offer was rejected by Gill's attorney.

_Larry Lackey_
Larry Lackey

Sworn to and subscribed before this the __14__ day of __May__ , 2007.

_Diane Jones_
Notary Public

My Commission Expires: __4-4-2010__

**JERRY M. BLEVINS**
ATTORNEY AT LAW
HILLWOOD OFFICE CENTER
2800 ZELDA ROAD, SUITE 200-3
MONTGOMERY, ALABAMA 36106
E-MAIL: ATTYJMBLEV@AOL.COM

TELEFAX: 334-262-7644

TELEPHONE 334-262-7600

November 29, 2006

Mr. Derek Pannier
Senior Multiline Representative
Progressive Insurance
4719 Woodmere Blvd.
Montgomery, Alabama 36117

RE:   My Client:        Mr. Lenzie Gill
      Your Insured:     Mr. Lenzie Gill
      Date of Loss:     10/27/2006
      Claim No.:        06-0162784-01

Dear Derek:

I am in receipt of your letter of November 16, 2006, along with the check made payable to my client in the amount of $427.80.

As I advised in writing on November 15, 2006, my client intends on proceeding with litigation concerning the handling of the above claim. Accordingly, your offer of "compromise" in the amount of $427.80, is hereby rejected. The check accompanying your letter is enclosed. If Progressive desires to discuss a reasonable resolution of the lawsuit to be filed in the immediate future, please promptly let me know.

Your cooperation and assistance is appreciated.

RECEIVED

DEC 0 1 2006

MONTGOMERY AL

Sincerely,

Jerry M. Blevins

JMB/cas

Enclosure

xc.
Mr. Lenzie Gill

PROG 020



VOID IF NOT PRESENTED WITHIN 6 MONTHS AFTER DATE OF ISSUE

| Policy #<br>32255693-002 | Insured<br>GILL, LENZIE I | Date Issued<br>11/20/2006 | Area Code<br>429 | Draft<br>Number 448574326 | |
| Claim #<br>060162784 | Claimant<br>GILL, LENZIE I | Date of Loss<br>10/27/2006 | State Code<br>AL | Office Issued At<br>AL-SVO S-BRN- | PAC |

Dollars $********427.80**

PAY  FOUR HUNDRED TWENTY SEVEN AND 80/100

| In Payment Of<br>COMP, LESS 500.00 DEDUCT | | CDS<br>CODE | 23PCL |

Payable through **National City Bank**
ASHLAND, OHIO   1-877-448-9544

Progressive Direct Insurance Company

Pay
To
LENZIE I GILL, ONLY*****************************************
222 IRIS LN
MONTGOMERY  AL 36105

PROG 019

BY _Ded Jarvis_
AUTHORIZED SIGNATURE

⑆448574326⑆ ⑉041203895⑉ 7701870⑈

*9835D AL 0103*



**PROGRESSIVE**
DIRECT

# ALABAMA
# MOTOR HOME
# POLICY

I CERTIFY THIS TO BE A
TRUE AND ACCURATE COPY.
BY _Kelly Doloheny_
DATE _12/3?/06_

PROG 043

Form No. 9835 AL (01/03)

EXHIBIT
_B_

# CONTENTS

**YOUR DUTIES**
What You Must Do In Case of an
   Accident or Loss ................................. 1

**GENERAL DEFINITIONS** ................................. 2

**PART I - LIABILITY TO OTHERS**
Insuring Agreement ................................. 6
Additional Definitions ................................. 7
Additional Payments ................................. 8
Exclusions ................................. 8
Limits of Liability ................................. 10
Financial Responsibility Laws ................................. 11
Other Insurance ................................. 11
Out-of-State Coverage ................................. 12

**PART II - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement ................................. 12
Additional Definitions ................................. 13
Exclusions ................................. 13
Limits of Liability ................................. 15
Other Insurance ................................. 15

**PART III - UNINSURED/UNDERINSURED MOTORIST COVERAGE**
Insuring Agreement ................................. 16
Additional Definitions ................................. 16
Exclusions ................................. 18
Limits of Liability ................................. 18
Other Insurance ................................. 20

**PART IV - DAMAGE TO A VEHICLE**
Insuring Agreement - Collision Coverage ................................. 20
Insuring Agreement - Comprehensive
   Coverage ................................. 20
Additional Definitions ................................. 21
Exclusions ................................. 22
Limits of Liability ................................. 25
Insuring Agreement - Total Loss
   Replacement/Purchase Price Coverage ................................. 27
Insuring Agreement - Agreed Value
   Coverage ................................. 28
Insuring Agreement - Disappearing
   Deductibles ................................. 29
Insuring Agreement - Loan/Lease
   Payoff Coverage ................................. 30

Insuring Agreement - Fire Department
   Service Coverage ................................. 31
Insuring Agreement - Emergency
   Expense Coverage ................................. 31
Insuring Agreement - Mexico Coverage ................................. 32
Mexico Coverage Warning ................................. 33
Payment of Loss ................................. 33
No Benefit to Bailee ................................. 33
Loss Payee Agreement ................................. 33
Other Insurance ................................. 33
Appraisal ................................. 34

**PART V - ROADSIDE ASSISTANCE COVERAGE**
Insuring Agreement ................................. 34
Additional Definitions ................................. 35
Exclusions ................................. 35
Unauthorized Service Provider ................................. 36
Other Insurance ................................. 36

**PART VI - PERSONAL EFFECTS COVERAGE**
Insuring Agreement - Replacement
   Cost Personal Effects Coverage ................................. 36
Insuring Agreement - Scheduled
   Personal Effects Coverage ................................. 37
Insuring Agreement - Full Timer's
   Secured Storage Personal Effects
   Coverage ................................. 37
Additional Definitions ................................. 37
Covered Loss ................................. 39
Exclusions ................................. 40
Limits of Liability ................................. 44
Other Insurance ................................. 47
Payment of Loss ................................. 47
No Benefit to Bailee ................................. 47
Appraisal ................................. 47

**PART VII - FULL TIMER'S PACKAGE**
Insuring Agreement - Full Timer's Package ................................. 48
Insuring Agreement - Full Timer's
   Personal Liability Coverage ................................. 48
Insuring Agreement - Full Timer's
   Medical Payments Coverage ................................. 49
Insuring Agreement - Full Timer's
   Loss Assessment Coverage ................................. 50
Insuring Agreement - Full Timer's
   Shed Contents Coverage ................................. 50
Additional Definitions ................................. 51
Exclusions ................................. 53
Limits of Liability ................................. 57
Other Insurance ................................. 59

## ALABAMA MOTOR HOME POLICY

If you pay your premium on time, we will provide the insurance described in this policy.

### YOUR DUTIES

### WHAT YOU MUST DO IN CASE OF AN ACCIDENT OR LOSS

**Notify Us As Soon As Practicable**

If a person or vehicle covered by this policy is involved in an accident, loss or occurrence for which this insurance may apply, report it to us within twenty-four (24) hours or as soon as practicable by calling us at 1-800-PROGRESSIVE.

For coverage to apply under this policy, you or an insured person must promptly report each accident, loss or occurrence even if an insured person is not at fault.

You or an insured person should provide us with the following accident, loss or occurrence information as soon as it is available:

* time;
* place;
* circumstances of the accident, loss or occurrence (for example, how the accident happened and weather conditions);
* names and addresses of all persons involved;
* names and addresses of any witnesses; and
* the license plate numbers and descriptions of the vehicles involved.

You or an insured person should also notify the police within twenty-four (24) hours or as soon as practicable if:

* the owner or operator of a vehicle involved in the accident cannot be identified;
* an accident which must be reported under state law has occurred; or
* theft or vandalism has occurred.

PROG 047

1

**PART VIII - VACATION LIABILITY COVERAGE**
Insuring Agreement ................................... 59
Additional Definitions ................................ 60
Exclusions ............................................... 62
Limits of Liability ..................................... 65
Other Insurance ....................................... 66

**PART IX - SCHEDULED MEDICAL BENEFITS - VACATION RESIDENCE COVERAGE**
Insuring Agreement ................................... 66
Additional Definitions ................................ 66
Exclusions ............................................... 67
Schedule of Benefits .................................. 67

**GENERAL PROVISIONS**
Policy Period and Territory ......................... 68
Policy Changes ........................................ 68
Terms of Policy Conformed to Statutes ......... 69
Transfer ................................................. 70
Fraud or Misrepresentation ........................ 70
Payment of Premium ................................. 70
Cancellation ............................................ 71
Cancellation Refund .................................. 74
Nonrenewal ............................................ 74
Proof of Notice ........................................ 74
Automatic Termination .............................. 74
Coverage Changes .................................... 74
Legal Action Against Us ............................. 75
Our Rights to Recover Payment ................... 75
Our Rights to Inspect ................................ 77
Joint and Individual Interests ...................... 77
Bankruptcy ............................................. 78

PROG 046

iii

For coverage to apply under this policy, a person claiming coverage must:

- cooperate with us in any matter concerning a claim or lawsuit;

- provide any written proof of loss we may reasonably require;

- allow us to take signed and recorded statements, including sworn statements and examinations under oath, and answer all reasonable questions we may ask as often as we may reasonably require;

- promptly send us any and all legal papers relating to any claim or lawsuit;

- attend hearings and trials as we require;

- take reasonable steps at and after the time of loss to protect the covered vehicle, non-owned vehicle or any other property that may be covered under this policy from further loss. We will pay reasonable expenses incurred in providing this protection. If you fail to do so, any further damages will not be covered under this policy;

- prepare an inventory of all damaged or stolen personal property, setting forth, in detail, the quantity, description, age, replacement cost, actual cash value, and amount of the damage or loss. All bills, receipts and related documents that support the values described in the inventory must be included if reasonably available;

- allow us to have the damaged covered vehicle, non-owned vehicle, or any other property that may be covered under this policy, inspected and appraised before its repair or disposal;

- submit to medical examinations at our expense by doctors we select as often as we may reasonably require; and

- authorize us to obtain medical and other records.

## GENERAL DEFINITIONS

Except as otherwise defined in this policy, terms appearing in boldface, whether in the singular, plural, or possessive will have the following meaning:

1. "Accident" means a sudden, unexpected, and unintended occurrence.

2. "Bodily injury" means bodily harm, sickness, or disease, including death that results from bodily

2     PROG 048

harm, sickness, or disease. "Bodily injury" does not include any sickness or disease that is transmitted by an insured person through personal or sexual contact.

3. "Business" includes a trade, profession, or occupation.

4. "Covered vehicle" means:

a. any vehicle expressly identified by make, model and vehicle identification number (VIN) on the Declarations Page, unless you have asked us to delete that vehicle from the policy;

b. any additional vehicle on the date you become the owner if:

(i) you acquire the vehicle during the policy period shown on the Declarations Page;

(ii) we insure all vehicles owned by you; and

(iii) no other insurance policy provides coverage for that vehicle.

If we provide coverage for a vehicle you acquire in addition to any vehicle shown on the Declarations Page, we will provide the broadest coverage, other than Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage, which we provide for any vehicle shown on the Declarations Page. We will provide that coverage for a period of thirty (30) days after you become the owner. We will not provide coverage after this thirty (30) day period, unless within this thirty (30) day period you ask us to insure the additional vehicle. If the broadest coverage is Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage, we will provide basic Comprehensive and Collision Coverage for the additional vehicle instead of these coverages. If you add any coverage to your policy or increase your limits, these changes to your policy will not become effective until after you ask us to add the coverage or increase your limits; and

c. any replacement vehicle on the date you become the owner if:

(i) you acquire the vehicle during the policy period shown on the Declarations Page;

3     PROG 049

(ii) the vehicle that you acquire replaces one shown on the **Declarations Page**; and

(iii) no other insurance policy provides coverage for that vehicle.

If the **vehicle** that **you** acquire replaces one shown on the **Declarations Page**, it will have the same coverage, other than Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage, as the **vehicle** it replaces. If the replaced **vehicle** had Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage, **we** will provide basic Comprehensive and Collision Coverage for the replacement **vehicle** instead of these coverages. **You** must ask **us** to insure a replacement **vehicle** within thirty (30) days after you become the owner if you want to continue any coverage **you** had under Part IV - Damage To A Vehicle. If the replaced vehicle did not have coverage under Part IV - Damage To A Vehicle, or **you** want to insure the replacement **vehicle** with Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage, **you** may ask **us** to add such coverage for the replacement **vehicle**. However, if **you** add any of these coverages, coverage will not become effective until after **you** ask **us** to add it. If **you** add any other coverage to this policy or increase **your** limits, it will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

5. "**Declarations Page**" means the document from **us** listing:

a. the types of coverage you have elected;

b. the limit for each coverage;

c. the cost for each coverage;

d. the specified vehicles covered by this policy; and

e. other information applicable to this policy.

6. "**Loss**" means sudden, direct, and accidental loss or damage.

7. "**Non-owned vehicle**" means any vehicle that is not owned by:

a. **you**;

b. a **relative**;

PROG 050

4

---

c. any other resident of your household; or

d. the named insured's non-resident spouse; and is in the custody of, or being operated by, **you** or a **relative** with the express or implied permission of the owner.

8. "**Occupying**" means in, on, entering, or exiting.

9. "**Owned**" means the person:

a. holds legal title to the property;

b. has legal possession of the property that is subject to a written security agreement with an original term of six (6) months or more;

c. has legal possession of the property that is leased to that person under a written agreement for a continuous period of six (6) months or more.

10. "**Owner**" means any person who, with respect to property:

a. holds legal title to the property;

b. has legal possession of the property that is subject to a written security agreement with an original term of six (6) months or more; or

c. has legal possession of the property that is leased to that person under a written agreement for a continuous period of six (6) months or more.

11. "**Pollutant**" means all pollutants and contaminants, including, but not limited to, any:

a. solid, liquid, gaseous, bacterial, organic or thermal irritant or contaminant;

b. smoke, vapor, soot, or fumes;

c. acids, alkalis, chemicals, or metals, including, but not limited to, lead or any material containing lead;

d. poisons;

e. sewage or waste, including materials to be recycled, reconditioned or reclaimed;

f. substances, including, but not limited to, asbestos or any material containing asbestos;

g. odors; or

h. compounds;

even if now or previously recognized as having a safe or useful purpose. The term "**pollutant**" includes residential, recreational, work-site, and commercial pollution or contamination.

PROG 051

5

12. "Property damage" means physical damage to, or destruction or loss of use of, tangible property.

13. "Relative" means a person primarily residing in the same household as you, and related to you by blood, marriage, or adoption, including a ward, stepchild, or foster child. Your unmarried dependent children temporarily away from home will be considered to be primarily residing in the same household as you if they intend to continue to reside in your household.

14. "Vehicle" means a land motor vehicle, including its permanently attached equipment, that:
   a. has built-in:
      (i) cooking, refrigeration, sleeping, and bathroom facilities; and
      (ii) self-contained:
         (a) heating and/or air-conditioning;
         (b) drinking water supply system; and
         (c) 110-125 volt electrical power system; or
   b. is shown on the Declarations Page and customarily used with a fifth-wheel trailer:
      (i) owned by you and insured under our Travel Trailer insurance program; and
      (ii) containing living quarters.

   "Vehicle" does not include any type of mobile home, manufactured housing, or any other wheeled device not designed for regular use on public roads.

15. "We", "Us", and "Our" mean the company providing the insurance, as shown on the Declarations Page.

16. "You" and "Your" mean:
   a. a person or persons shown as a named insured on the Declarations Page; and
   b. the spouse of a named insured if residing in the same household.

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT

Subject to the Limits of Liability, if you pay the premium for liability coverage, we will pay:
1. damages, other than punitive or exemplary damages, for bodily injury and property damage; and

2. punitive damages due for wrongful death;

for which an insured person becomes legally responsible because of an accident arising out of the:
1. ownership, maintenance, or use of a vehicle; or
2. use of any trailer while attached to a:
   a. covered vehicle; or
   b. non-owned vehicle operated by an insured person.

Damages include prejudgment interest awarded against an insured person.

We will settle or defend, at our option, any claim for damages covered by this Part I.

### ADDITIONAL DEFINITIONS

When used in this Part I, whether in the singular, plural, or possessive:
1. "insured person" means:
   a. you or a relative with respect to an accident arising out of the ownership, maintenance, or use of a covered vehicle;
   b. any person with respect to an accident arising out of that person's use of a covered vehicle with the express or implied permission of you or a relative;
   c. a relative with respect to an accident arising out of the maintenance or use of a non-owned vehicle with the express or implied permission of the owner of the vehicle;
   d. you with respect to an accident arising out of the maintenance or use of any vehicle with the express or implied permission of the owner of the vehicle;
   e. any person or organization with respect only to vicarious liability for an accident arising out of the use of a covered vehicle or non-owned vehicle by a person described in a, b, c, or d above; and
   f. any Additional Interest Insured designated by you in your application or by a change request agreed to by us, with respect to liability for an accident arising out of the use of a covered vehicle or non-owned vehicle by a person described in a, b, c, or d above.

2. "Trailer" means a non-motorized trailer designed to be towed on public roads by a vehicle. "Trailer" does not include any type of mobile home, manufactured housing, or any other wheeled device not designed for regular use on public roads.

## ADDITIONAL PAYMENTS

In addition to our limit of liability, we will pay for an insured person:

1. all expenses that we incur in the settlement of any claim or defense of any lawsuit;

2. interest accruing after entry of judgment, until we have paid or tendered that portion of the judgment which does not exceed our limit of liability. This does not apply if we have not been given notice of suit or the opportunity to defend an insured person;

3. the premium on an appeal bond or attachment bond required in any lawsuit we defend. We have no duty to purchase a bond in an amount exceeding our limit of liability, and we have no duty to apply for or furnish these bonds;

4. up to $250 for a bail bond required because of an accident arising out of the ownership, maintenance, or use of a covered vehicle or non-owned vehicle. We have no duty to apply for or furnish this bond; and

5. reasonable expenses, including loss of earnings up to $200 a day, incurred at our request.

## EXCLUSIONS — READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART I.

Coverage under this Part I, including our duty to defend, does not apply to:

1. bodily injury or property damage arising out of the ownership, maintenance, or use of a vehicle or trailer while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply:
   a. to shared-expense transportation pools; or

   b. when a driver hired by you and listed in our records as a regular driver of a covered vehicle is operating that covered vehicle to transport you or a relative;

2. any liability assumed by an insured person under any contract;

3. bodily injury to an employee of an insured person arising out of or within the course of employment, except for domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

4. bodily injury or property damage arising out of an accident involving a vehicle or trailer while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to you, a relative, or an agent or employee of you or a relative, when using a covered vehicle;

5. bodily injury or property damage resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

6. bodily injury or property damage due to a nuclear reaction or radiation;

7. bodily injury or property damage for which insurance is afforded under a nuclear energy liability insurance contract;

8. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

9. bodily injury or property damage caused by an intentional act of an insured person or at the direction of an insured person;

10. property damage to any property owned by, rented to, being transported by, used by, or in the charge of an insured person or a person residing in your household. However, this exclusion does not apply to a house, a dwelling structure permanently attached to land, or a garage, if rented by you and damaged by a covered vehicle;

11. bodily injury to you or a relative;

12. bodily injury or property damage resulting from a relative's operation or use of a vehicle,

other than a **covered vehicle**, owned by **you** or a person who resides with **you**;

13. **bodily injury** or **property damage** resulting from **your** operation or use of a vehicle owned by **you**, other than a **covered vehicle**;

14. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any vehicle or trailer while leased or rented to others;

15. **bodily injury** or **property damage** arising out of the ownership, maintenance or use of a vehicle or trailer while it is parked and:

   a. being used as a residence or premises;

   b. being used for commercial or business purposes;

   c. being used as a premises for office, store or display purposes; or

   d. stabilizing jacks are in use.

   Types of use "as a residence or premises" to which this exclusion applies include, but are not limited to, use of a vehicle or trailer for entertainment purposes, camping purposes, as a living facility, or as a sleeping facility.

## LIMITS OF LIABILITY

The limit of liability shown on the **Declarations Page** is the most we will pay for any one accident regardless of the number of:

1. claims made;
2. **covered vehicles**;          PROG 056
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in an **accident**; or
6. premiums paid.

If the **Declarations Page** shows that "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, we will comply with any law that requires us to provide any separate limits.

If your **Declarations Page** shows a split limit:

1. the amount shown for "each person" is the most we will pay for all damages due to a **bodily injury** to one person;

2. subject to the "each person" limit, the amount shown for "each accident" is the most we will pay for all damages due to **bodily injury** sustained by two or more persons in any one accident; and

3. the amount shown for "property damage" is the most we will pay for the total of all **property damage** for which an **insured person** becomes liable as a result of any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to a person and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

No one will be entitled to duplicate payments for the same elements of damages.

Any payment to a person under this Part I shall be reduced by any payment to that person under Part III - Uninsured/Underinsured Motorist Coverage.

A vehicle and attached trailer are considered one vehicle. Therefore, the Limits of Liability will not be increased for an **accident** involving a **vehicle** that has an attached **trailer**.

## FINANCIAL RESPONSIBILITY LAWS

When **we** certify this policy as proof of financial responsibility, this policy will comply with, and is subject to, all the provisions of the Alabama Motor Vehicle Safety-Responsibility Act. **You** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

## OTHER INSURANCE          PROG 057

No coverage is provided under this Part I for **bodily injury** or **property damage** covered under:

1. a policy applicable to an insured location, as described in Part VII - Full Timer's Package, or a temporary residence; or

2. Part VII - Full Timer's Package or Part VIII - Vacation Liability Coverage.

If coverage applies and there is other applicable liability insurance or bond, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for liability arising out of the ownership, maintenance, or use of a:
1. **vehicle**, other than a **covered vehicle**; or
2. **trailer**, other than a **trailer** being towed by a **covered vehicle**;
will be excess over any other collectible insurance, self-insurance, or bond.

## OUT-OF-STATE COVERAGE

If an accident to which this Part I applies occurs in any state, territory or possession of the United States of America or any province or territory of Canada, other than the one in which a **covered vehicle** is principally garaged, and the state, province, territory or possession has:
1. a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **Declarations Page**, this policy will provide the higher limit; or
2. a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses a **vehicle** in that state, province, territory or possession, this policy will provide the greater of:
a. the required minimum amounts and types of coverage; or
b. the Limits of Liability under this policy.

## PART II - MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

Subject to the Limits of Liability, if you pay the premium for Medical Payments Coverage, we will pay the usual and customary charge for reasonable and necessary expenses, incurred within three (3) years from the date of an accident, for medical and funeral services because of **bodily injury**:
1. sustained by an **insured person**;

2. caused by an accident; and
3. arising out of the ownership, maintenance or use of a motor vehicle or trailer.

Any dispute as to the usual and customary charge will be resolved between the service provider and us.

## ADDITIONAL DEFINITIONS

When used in this Part II, whether in the singular, plural, or possessive:
1. "**Insured person**" means:
a. **you** while occupying any **vehicle**, other than a **vehicle** owned by **you** which is not a **covered vehicle**;
b. a **relative** while occupying a **covered vehicle** or **non-owned vehicle**;
c. **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not occupying a motor vehicle;
d. any other person while occupying a **covered vehicle**; and
e. any person occupying a **trailer** owned by **you** while it is attached to a **covered vehicle**.
2. "**Trailer**" means a non-motorized trailer designed to be towed on public roads by a land motor vehicle. "**Trailer**" does not include any type of mobile home, manufactured housing, or any other wheeled device not designed for regular use on public roads.
3. "**Usual and customary charge**" means an amount which we determine represents a customary charge for the service in the geographical area in which the service is rendered. We shall determine the usual and customary charge through the use of independent sources of **our** choice.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART II.**

Coverage under this Part II does not apply to **bodily injury**:
1. sustained while occupying a **vehicle** or **trailer** while being used to carry persons or prop-

erty for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply:

  a. to shared-expense transportation pools; or

  b. when a driver hired by you and listed in our records as a regular driver of a covered vehicle is operating that covered vehicle to transport you or a relative;

2. sustained while occupying any vehicle or trailer while it is parked and:

  a. being used as a residence or premises;

  b. being used for commercial or business purposes;

  c. being used as a premises for office, store or display purposes; or

  d. stabilizing jacks are in use.

  Types of use "as a residence or premises" to which this exclusion applies include, but are not limited to, use of a vehicle or trailer for entertainment purposes, camping purposes, as a living facility, or as a sleeping facility.

3. if workers' compensation benefits are available for the bodily injury;

4. arising out of an accident involving a vehicle or trailer while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to you, a relative, or an agent or employee of you or a relative, when using a covered vehicle;

5. arising out of an accident involving use of a covered vehicle by any person other than you or a relative, while the vehicle has been entrusted to someone in the business of selling, renting or brokering the sale of vehicles for the purpose of selling, renting or brokering the sale of the vehicle;

6. resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

7. due to a nuclear reaction or radiation;

8. for which insurance is afforded under a nuclear energy liability insurance contract;

9. for which the United States Government is liable under the Federal Tort Claims Act;

10. sustained by any person while occupying a covered vehicle or trailer without the express or implied permission of you or a relative;

11. sustained by you or a relative while occupying a non-owned vehicle without the express or implied permission of the owner; or

12. that is intentionally inflicted on an insured person at that person's request, or is self-inflicted.

## LIMITS OF LIABILITY

The Medical Payments limit of liability shown on the Declarations Page is the most we will pay for each insured person injured in any one accident, regardless of the number of:

1. claims made;
2. covered vehicles;
3. insured persons;
4. lawsuits brought;
5. vehicles involved in an accident; or
6. premiums paid.

Any amount payable to an insured person under this Part II will be reduced by any amounts paid or payable for the same expense under Part I – Liability To Others, Part III – Uninsured/Underinsured Motorist Coverage, or Part VII – Full Timer's Package.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

## OTHER INSURANCE

If there is other applicable vehicle or trailer medical payments insurance, we will pay only our share of the expenses for medical and funeral services. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for an insured person occupying a:

1. vehicle, other than a covered vehicle; or
2. trailer, other than a trailer being towed by a covered vehicle;

will be excess over any other vehicle or trailer insurance providing payments for medical or funeral expenses.

## PART III – UNINSURED/UNDERINSURED MOTORIST COVERAGE

### INSURING AGREEMENT

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. sustained by an **insured person**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle**.

An **insured person** must notify **us** in writing at least thirty (30) days before entering into any settlement with the owner or operator of an **uninsured motor vehicle**, or that person's liability insurer. In order to preserve our right of subrogation, **we** may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an **uninsured motor vehicle**. If **we** do this, **you** agree to assign to **us** all rights that **you** have against the owner or operator of an **uninsured motor vehicle**.

### ADDITIONAL DEFINITIONS

When used in this Part III, whether in the singular, plural, or possessive:

1. "**Insured person**" means:
   a. **you** or a **relative**;
   b. any person **occupying** a **covered vehicle**; and
   c. any person who is entitled to recover damages covered by this Part III because of **bodily injury** sustained by a person described in a or b above.

2. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
   a. to which no **bodily injury** liability bond or policy applies at the time of the accident;
   b. to which a **bodily injury** liability bond or policy applies at the time of the accident, but the bonding or insuring company:
      (i) denies coverage; or
      (ii) is or becomes insolvent;

16        PROG 062

c. to which a **bodily injury** liability bond or policy applies at the time of the accident, but its limit of liability for **bodily injury** is less than the minimum limit of liability for **bodily injury** specified by the financial responsibility laws of the state under which this policy is issued;

d. that is a hit-and-run vehicle whose operator or owner cannot be identified and which causes an **accident** resulting in **bodily injury** to an **insured person**.
   Within thirty (30) days of the accident the **insured person**, or someone on his or her behalf, must also provide **us** with a statement under oath that the **insured person**, or his or her legal representative, has a cause of action against the owner or operator of a vehicle who cannot be identified. The statement must set forth facts supporting the claim.
   If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proven by competent evidence; or

e. to which a **bodily injury** liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for **bodily injury** is less than the damages which the **insured person** is legally entitled to recover.

An "**uninsured motor vehicle**" does not include any vehicle or equipment:

a. owned or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;
b. operated on rails or crawler treads;
c. designed mainly for use off public roads, while not on public roads;
d. while being used as a residence or premises;
e. shown on the **Declarations Page** of this policy; or
f. not required to be registered as a motor vehicle.

17        PROG 063

EXCLUSIONS - READ THE FOLLOWING EX-CLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORD-ED UNDER THIS PART III.

1. Coverage under this Part III is not provided for bodily injury sustained by any person while using or occupying:
   a. a covered vehicle while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply:
      (i) to shared-expense transportation pools; or
      (ii) when a driver hired by you and listed in our records as a regular driver of a covered vehicle is operating that covered vehicle to transport you or a relative;
   b. a covered vehicle without the express or implied permission of you or a relative; or
   c. a non-owned vehicle without the express or implied permission of the owner.

2. Coverage under this Part III will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a. workers' compensation law; or
   b. disability benefits law.

LIMITS OF LIABILITY

The limit of liability shown on the Declarations Page for the coverages under this Part III is the most we will pay for any one accident regardless of the number of:
1. claims made;
2. Insured persons;
3. lawsuits brought;
4. vehicles involved in an accident; or
5. premiums paid.

If coverage under this Part III applies to one covered vehicle, our maximum limit of liability is the amount shown on the Declarations Page for coverage under this Part III. However, if coverage under this Part III applies to more than one covered vehicle,

PROG 064

18

our limit of liability will be the amount shown on the Declarations Page for coverage under this Part III multiplied by the number of covered vehicles listed on this policy as covered under Part III, not to exceed three.

If the Declarations Page shows that "combined single limit" or "CSL" applies, the amount shown is the most we will pay for the total of all damages resulting from any one accident. However, without changing this total "each accident" limit of liability, we will comply with any law that requires us to provide any separate limits.

If your Declarations Page shows a split limit:
1. the amount shown for "each person" is the most we will pay for all damages due to a bodily injury to one person; and
2. subject to the "each person" limit, the amount shown for "each accident" is the most we will pay for all damages due to bodily injury sustained by two or more persons in any one accident.

The "each person" limit of liability includes the total of all claims made for bodily injury to an insured person and all claims of others derived from such bodily injury, including, but not limited to, emotional injury or mental anguish resulting from the bodily injury of another or from witnessing the bodily injury of another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The damages which an insured person is legally entitled to recover because of bodily injury shall be reduced by:
1. all sums paid because of bodily injury by or on behalf of any persons or organizations that may be legally responsible; and
2. any difference between the sums paid by the insurers of the persons or organizations who may be legally responsible and the limits of liability under those bonds and policies.

Any payment made to a person under this Part III shall reduce any amount that the person is entitled to recover under Part I - Liability To Others.

PROG 065

19

No one will be entitled to duplicate payments for the same elements of damages.

Any judgment or settlement for damages against an operator or owner of an uninsured motor vehicle that arises out of a lawsuit brought without our written consent is not binding on us.

## OTHER INSURANCE

If there is other applicable uninsured or underinsured motorist coverage, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all available coverage limits. However, any insurance we provide shall be excess over any other uninsured or underinsured motorist coverage, except for bodily injury to you or a relative when occupying a covered vehicle.

We will not pay for any damages that would duplicate any payment made for damages under other insurance.

## PART IV - DAMAGE TO A VEHICLE

### INSURING AGREEMENT - COLLISION COVERAGE

If you pay the premium for Collision Coverage, we will pay for loss to a:
1. covered vehicle for which Collision Coverage has been purchased;
2. non-owned vehicle; or
3. trailer;

when it overturns or is in a collision with another object, subject to the Limits of Liability.

Subject to any deductible applicable to a collision loss, we will replace, or reimburse the reasonable cost to replace, any child safety seat or restraint damaged in an accident to which this Collision Coverage applies.

### INSURING AGREEMENT - COMPREHENSIVE COVERAGE

If you pay the premium for Comprehensive Cov-

erage, we will pay for comprehensive loss to a:
1. covered vehicle for which Comprehensive Coverage has been purchased;
2. non-owned vehicle; or
3. trailer;

subject to the Limits of Liability.

A comprehensive loss is a loss to a covered vehicle, non-owned vehicle, or trailer, other than a loss covered under Collision Coverage, including, but not limited to, loss caused by any of the following:
1. impact with an animal (including a bird);
2. explosion or earthquake;
3. fire;
4. malicious mischief or vandalism;
5. missiles or falling objects;
6. riot or civil commotion;
7. theft or larceny; or
8. windstorm, hail, or flood.

If we can pay the loss under either Comprehensive Coverage or Collision Coverage, we will pay under the coverage where you collect the most.

### ADDITIONAL DEFINITIONS

When used in this Part IV, whether in the singular, plural, or possessive:
1. "Agreed value" means the "agreed value" as shown on the Declarations Page.
2. "Market value" means the "market value" as shown on the Declarations Page.
3. "Purchase price" means the "purchase price" as shown on the Declarations Page.
4. "Total loss" means:
   a. the theft of the vehicle if the vehicle is not recovered within thirty (30) days; or
   b. any other loss to the vehicle that is payable under this Part IV if the actual cash value of the vehicle at the time of the loss, when reduced by the salvage value after the loss, is less than the anticipated costs if the vehicle is repaired (including parts and labor).
5. "Trailer" means a non-motorized trailer (including anti-sway bars, tow bars, torsion bars, tow hitches, tow dollies, and other towing devices

that are not bolted to or permanently attached to the towing vehicle) which is designed to be towed on public roads by a land motor vehicle, that is:

a. **owned by you and customarily used with a covered vehicle;** or
b. **not owned by you, while being used with a covered vehicle;**

provided it has no built-in sleeping facilities and is not used:

a. for commercial or business purposes;
b. as a primary residence;
c. as a premises of office, store or display purpose; or
d. as a passenger conveyance.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IV.**

Coverage under this Part IV does not apply for loss:

1. to a **covered vehicle, non-owned vehicle, or trailer,** while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply:
   a. to shared-expense transportation pools;
   b. when a driver hired by you and listed in our records as a regular driver of a **covered vehicle** is operating that **covered vehicle** to transport you or a relative;

2. to a **non-owned vehicle** or **trailer** if being maintained or used by a person while employed or engaged in any business;

3. to a **covered vehicle, non-owned vehicle, or trailer,** resulting from any pre-arranged or organized racing, speed or demolition contest, stunting activity, or in practice or preparation for any such contest or activity;

4. to a **covered vehicle, non-owned vehicle, or trailer,** due to a nuclear reaction or radiation;

5. to a **covered vehicle, non-owned vehicle, or trailer,** for which insurance is afforded under a nuclear energy liability insurance contract;

6. caused by the order of any governmental or civil authorities to destroy, confiscate or seize a cov-

ered **vehicle, non-owned vehicle, or trailer,** because you or any relative engaged in illegal activities;

7. to a **covered vehicle, non-owned vehicle, or trailer,** caused by an intentional act by you, a relative, or the owner of the non-owned vehicle or trailer, or at the direction of you, a relative, or the owner of the non-owned vehicle or trailer. However, this exclusion does not apply to a **loss** to a **covered vehicle** to the extent of the legal interest of a named insured who:
   a. sustains the loss as the result of abuse by another named insured;
   b. did not direct, participate in, or consent to the intentional act causing the loss; and
   c. either:
      (i) files an abuse complaint against the person whose act caused the loss and does not voluntarily dismiss the complaint; or
      (ii) seeks a warrant for the abuser's arrest for the act causing the loss and cooperates in the prosecution of the abuser;

8. to a **covered vehicle, non-owned vehicle, or trailer,** that is due and confined to:
   a. wear and tear;
   b. prior loss or damage;
   c. manufacturing defects;
   d. improper or lack of routine maintenance, or failure to perform maintenance as prescribed by the manufacturer;
   e. contamination or pollutants;
   f. freezing;
   g. gradual accumulation of snow or ice on a vehicle or trailer;
   h. scorching, marring, scratching, or breakage of internal equipment or furnishings whether permanently attached or not. However, this exclusion does not apply to:
      (i) scorching, marring, scratching or breakage caused by malicious mischief, vandalism, riot, civil commotion, fire, or lightning; or
      (ii) breakage of glass which is permanently a part of or attached to the covered vehicle;
   i. mechanical or electrical breakdown or failure; or

j. road damage to tires.

This exclusion does not apply if the damage results from the theft of a covered vehicle, non-owned vehicle, or trailer;

9. to a covered vehicle, non-owned vehicle, or trailer, caused directly or indirectly by any of the following:
   a. water leakage or seepage unless caused by any other loss covered under this Part IV;
   b. wet or dry rot;
   c. rust or corrosion;
   d. dampness of atmosphere or extremes of temperature; or
   e. deterioration;

10. to a covered vehicle, non-owned vehicle, or trailer, caused directly or indirectly by mold, mildew or fungus, including any type or form of:
    a. decomposing or disintegrating organic material or microorganism;
    b. organic surface growth on moist, damp, or decaying matter;
    c. yeast or spore-bearing plant-like organism; or
    d. spores, scents, toxins, bacteria, viruses, or any other by-products produced or released by any mold, mildew, fungus, or other microbes.

However, this exclusion does not apply to loss caused by mold, mildew or fungus, if such loss is caused by any other loss covered under this Part IV.

11. due to theft or conversion of a covered vehicle, non-owned vehicle, or trailer:
    a. by you, a relative, or any resident of your household; or
    b. prior to its delivery to you or a relative;

12. to equipment, devices, accessories or any other personal property not permanently installed in or attached to a vehicle or trailer. This includes, but is not limited to:
    a. tapes, compact discs, cassettes, and other recording or recorded media;
    b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, or other recording or recorded media;
    c. any device used for the detection or loca-

tion of radar, laser, or other speed measuring equipment or its transmissions; and
   d. CB radios, telephones, two-way mobile radios, televisions, VCRs, DVD players, computers, or PDAs;

13. to a covered vehicle or trailer while it is leased or rented to others;
14. to a covered vehicle, non-owned vehicle, or trailer, for diminution of value;
15. other than an impact loss to a covered vehicle, non-owned vehicle, or trailer, caused by birds, vermin, rodents, insects or other animals; or
16. to a covered vehicle, non-owned vehicle, or trailer, caused directly or indirectly by:
    a. war (declared or undeclared), including civil war;
    b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack;
    c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts; or
    d. any intentional discharge, dispersal or release of radioactive, nuclear, pathogenic, poisonous biological, chemical or hazardous material for any purpose other than its safe and useful purpose.

## LIMITS OF LIABILITY          PROG 071

1. The limit of liability for loss to a covered vehicle, non-owned vehicle, or trailer is the lowest of:
   a. the actual cash value of the stolen or damaged property at the time of the loss, reduced by:
      (i) the applicable deductible shown on the Declarations Page; and
      (ii) its salvage value if you or the owner retain the salvage;
   b. the amount necessary to replace the stolen or damaged property, reduced by:
      (i) the applicable deductible shown on the Declarations Page; and

    (ii) its salvage value if you or the owner retain the salvage;

c. the amount necessary to repair the damaged property to its pre-loss condition, reduced by the applicable deductible shown on the **Declarations Page**;

d. the **market value**, reduced by its salvage value if **you** or the owner retain the salvage; or

e. with respect to a **loss** to a **trailer**, the limit of liability shown on the **Declarations Page** for Trailer Coverage reduced by its salvage value if **you** or the **owner** retain the salvage.

2. **If you** purchase Total Loss Replacement/Purchase Price Coverage, then subsection 1 above shall not apply for a vehicle that sustains a total loss, and the limit of liability for Total Loss Replacement/Purchase Price Coverage shall apply.

3. If you purchase Agreed Value Coverage, then subsection 1 above shall not apply and the limit of liability for Agreed Value Coverage shall apply.

4. Payments for loss covered under this Part IV are subject to the following provisions:

a. no more than one deductible shall be applied to any one covered loss;

b. if coverage applies to a non-owned vehicle, we will provide the broadest coverage, other than Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage, applicable to any vehicle shown on the **Declarations Page**. However, the highest deductible on any covered vehicle shall apply;

c. an adjustment for physical condition, which may also be referred to as betterment, wear and tear, or prior damage, will be made in determining the Limits of Liability. However, this shall not apply to a total loss if the covered vehicle is covered by Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage;

d. in determining the amount necessary to repair damaged property to its pre-loss condition, the amount to be paid by us:

    (i) shall not exceed the prevailing compe-

titive labor rates charged in the area where the property is to be repaired, and the cost of repair or replacement parts and equipment, as reasonably determined by us; and

    (ii) will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

       (a) original manufacturer parts or equipment; and

       (b) nonoriginal manufacturer parts or equipment;

e. the actual cash value is determined by the market value, age and condition of the vehicle at the time the loss occurs;

f. duplicate recovery for the same elements of damages is not permitted; and

g. any amount paid or payable to a person under this Part IV shall be reduced by any amount paid for **property damage** under Part III - Uninsured/Underinsured Motorist Coverage.

5. If more than one vehicle is shown on the **Declarations Page**, coverage will be provided as specified on the **Declarations Page** as to each vehicle.

6. If two or more deductibles apply to any one covered loss, only the lowest deductible will apply.

7. No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

## INSURING AGREEMENT - TOTAL LOSS REPLACEMENT/PURCHASE PRICE COVERAGE

If there is a total loss to a covered vehicle and you have purchased Total Loss Replacement/Purchase Price Coverage for that covered vehicle, then subsection 1 of the Limits of Liability provision under this Part IV will not apply to that total loss and the following shall apply:

1. The limit of liability for a covered vehicle for which Total Loss Replacement/Purchase Price Coverage was purchased is as follows:

a. when the covered vehicle is, at the time of

loss, the current model year, or the first through fourth preceding model year, the applicable limit of liability will be:

(i) if you choose to replace the covered vehicle, the cost of a new vehicle as determined by us that:
(a) has not previously had a title issued or recorded to any person or entity, other than a dealer or manufacturer, and
(b) is, to the extent possible, the same make, class, size, and type, and which contains reasonably similar equipment to the covered vehicle; or
(ii) if you choose not to replace the covered vehicle, the purchase price; or

b. when the covered vehicle is, at the time of loss, the fifth preceding model year or older, the applicable limit of liability will be the purchase price.

All applicable limits of liability are subject to an adjustment for the salvage value of the covered vehicle if you or the owner retain the salvage.

## INSURING AGREEMENT - AGREED VALUE COVERAGE

If you purchase Agreed Value Coverage under this Part IV for a covered vehicle, then subsection 1 of the Limits of Liability provision under this Part IV shall not apply and the following provision shall apply to a loss to that covered vehicle:

1. The limit of liability for a loss to a covered vehicle for which Agreed Value Coverage was purchased is as follows:
   a. for a total loss to a covered vehicle which has an agreed value supported by the proper documentation, our limit of liability is the agreed value, reduced by its salvage value if you or the owner retain the salvage; and
   b. for a loss other than a total loss to a covered vehicle, or for a total loss where the agreed value is not supported by proper documentation, our limit of liability is the lower of:
   (i) the actual cash value of the stolen or

damaged property at the time of the loss, reduced by:
(a) the applicable deductible as shown on the Declarations Page; and
(b) its salvage value if you or the owner retain the salvage;
(ii) the amount necessary to replace the stolen or damaged property, reduced by:
(a) the applicable deductible as shown on the Declarations Page; and
(b) its salvage value if you or the owner retain the salvage;
(iii) the amount necessary to repair the stolen or damaged property to its pre-loss condition, reduced by the applicable deductible as shown on the Declarations Page; or
(iv) the agreed value, reduced by the salvage value of the covered vehicle if you or the owner retain the salvage.

"Proper documentation" is the documentation required by us to support the agreed value for a covered vehicle.

## INSURING AGREEMENT - DISAPPEARING DEDUCTIBLES

If you pay the premium for Disappearing Deductibles, then the following is added to the Limits of Liability provision under this Part IV of your policy:

If, during any policy period, you do not have a loss under Comprehensive Coverage or Collision Coverage for which we have paid any amount, then:
1. any deductible for Comprehensive Coverage and Collision Coverage shall be reduced for the following policy period by twenty-five percent (25%); and
2. no deductible for Comprehensive Coverage and Collision Coverage will apply for the fifth policy period and thereafter if you do not have any losses during the previous four (4) consecutive policy periods.

If you change the deductible amount for Comprehensive Coverage or Collision Coverage on

any covered vehicle at any time, then all previously applied reductions will be eliminated. Thereafter, the deductible may again be reduced if the conditions set forth above are satisfied.

If you have a **loss** at any time for which **we** make a payment under Comprehensive Coverage or Collision Coverage, then the most recent elected deductible will be restored for the subsequent policy period. Thereafter, the deductible may again be reduced if the conditions set forth above are satisfied.

Reductions and increases in the deductible under this provision shall apply to all **covered vehicles**.

## INSURING AGREEMENT - LOAN/LEASE PAYOFF COVERAGE

If **you** pay the premium for Loan/Lease Payoff Coverage for a **covered vehicle**, and the **covered vehicle** for which this coverage has been purchased sustains a **total loss**, **we** will pay, in addition to any amounts otherwise payable under this Part IV, the difference between:

1. the actual cash value of the **covered vehicle** at the time of the **total loss** reduced by the applicable deductible and by its salvage value if **you** or the owner retain the salvage; and

2. any greater amount the **owner** of the **covered vehicle** is legally obligated to pay under a written loan or lease agreement to which the **covered vehicle** is subject at the time of the **total loss**, reduced by:

a. unpaid finance charges or refunds due to the **owner** for such charges;

b. excess mileage charges or charges for wear and tear;

c. charges for extended warranties or refunds due to the **owner** for extended warranties;

d. charges for credit insurance or refunds due to the **owner** for credit insurance;

e. past due payments and charges for past due payments;

f. collection or repossession expenses; and

g. its salvage value if **you** retain the salvage.

However, **our** payment under this Loan/Lease Payoff Coverage shall not exceed twenty-five percent (25%) of the actual cash value of the **covered vehicle** at the time of the **total loss**.

## INSURING AGREEMENT - FIRE DEPARTMENT SERVICE COVERAGE

If **you** purchase Comprehensive Coverage and Collision Coverage, **we** will pay up to an additional $1,000 for **your** liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect the **covered vehicle** for which Comprehensive Coverage and Collision Coverage has been purchased.

## INSURING AGREEMENT - EMERGENCY EXPENSE COVERAGE

If **you** pay the premium for Emergency Expense Coverage and a **loss** covered under Collision Coverage or Comprehensive Coverage occurs which:

1. renders the **covered vehicle** or **non-owned vehicle** inoperable;

2. requires the **covered vehicle** to be repaired; or

3. is one in which the **covered vehicle** is stolen;

and such **loss** occurs more than 50 miles from **your** residence shown on the **Declarations Page** or **you** have the Full Timer's Package, then, subject to the applicable limits of liability for Emergency Expense Coverage, **we** will reimburse **your** reasonable expenses incurred for:

1. temporary living facilities;

2. transportation back to **your** residence;

3. the cost of returning the **covered vehicle** or **non-owned vehicle** to **your** residence, if **we** have not declared it a **total loss**; and

4. rental charges if **you** rent a motor vehicle from a rental agency or vehicle repair shop while the **covered vehicle** is being repaired.

**You must provide us written proof of your expenses.**

**We** will only pay for the above reasonable expenses incurred by **you** beginning on the date of **loss**, and ending:

1. when the **covered vehicle** or **non-owned vehicle** has been repaired or replaced; or

2. In the case of theft, when the covered vehicle or non-owned vehicle has been recovered and repaired, or replaced.

Duplicate recovery for the same elements of damages is not permitted.

## INSURING AGREEMENT - MEXICO COVERAGE

If you purchase Comprehensive Coverage and Collision Coverage, the policy territory described in the General Provisions of this policy is extended for Comprehensive Coverage and Collision Coverage to include a loss to a covered vehicle that occurs in Mexico or while the covered vehicle is being transported between Mexican ports, subject to the additional following conditions and restrictions:

1. this Mexico Coverage does not apply if liability insurance from a licensed Mexican insurance company is not in force at the time of loss;
2. we will only pay for repairs performed in the United States; and
3. we will not pay for repairs performed in Mexico.

If the covered vehicle cannot be driven as a result of a loss that occurs in Mexico, we will pay the cost of necessary towing and labor to return the covered vehicle to the nearest point in the United States where repairs can be made.

MEXICO COVERAGE WARNING: MOTOR VEHICLE ACCIDENTS IN MEXICO ARE SUBJECT TO THE LAWS OF MEXICO, NOT THE LAWS OF THE UNITED STATES. UNDER MEXICAN LAW, MOTOR VEHICLE ACCIDENTS ARE CONSIDERED A CRIMINAL OFFENSE AS WELL AS A CIVIL MATTER. THE MEXICO COVERAGE PROVIDED UNDER THIS POLICY DOES NOT MEET MEXICAN MOTOR VEHICLE INSURANCE REQUIREMENTS. YOU ARE REQUIRED TO PURCHASE LIABILITY INSURANCE THROUGH A LICENSED MEXICAN INSURANCE COMPANY FOR MEXICO COVERAGE UNDER THIS POLICY TO APPLY.

## PAYMENT OF LOSS

At our expense, we may return any recovered stolen property to you or to the address shown on the Declarations Page, with payment for any damage resulting from the theft. We may keep all or part of the property at the agreed or appraised value. We may settle any loss with you or the owner or lienholder of the property.

## NO BENEFIT TO BAILEE

Coverage under this Part IV will not directly or indirectly benefit any carrier or other bailee for hire.

## LOSS PAYEE AGREEMENT

Payment under this Part IV for a total loss to a covered vehicle will be made according to your interest and the interest of any Loss Payee or lienholder shown on the Declarations Page or designated by you. Payment may be made to both jointly, or separately, at our discretion. We may make payment for a partial loss covered under this Part IV directly to the repair facility with your consent.

Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of you or a relative, or where the loss is otherwise not covered under the terms of this policy, the Loss Payee or lienholder's interest will not be protected.

We will be entitled to the Loss Payee or lienholder's rights of recovery, to the extent of our payment to the Loss Payee or lienholder.

## OTHER INSURANCE

If there is other applicable insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability. However, any insurance that we provide for a vehicle, other than a covered vehicle, or for a trailer, will be excess over any other collectible source of recovery including, but not limited to:

1. any coverage provided by, to, or through the

## ADDITIONAL DEFINITIONS

When used in this Part V, whether in the singular, plural, or possessive:

1. **"Covered disabled vehicle"** means a disabled vehicle that is:

   a. **a covered vehicle** for which this coverage has been purchased;

   b. any trailer or motor vehicle under one ton load capacity while being towed by a **covered vehicle** for which this coverage has been purchased; or

   c. any motor vehicle under one ton load capacity that is customarily towed by a **covered vehicle** for which this coverage has been purchased, that becomes disabled while such **covered vehicle** is parked and being used as your residence.

2. **"Covered emergency"** means a disablement that is a result of:

   a. mechanical or electrical breakdown;

   b. battery failure;

   c. insufficient supply of fuel, oil, water, or other fluid;

   d. flat tire;

   e. lock-out; or

   f. entrapment in snow, mud, water or sand, within 100 feet of a road or highway.

**EXCLUSIONS – READ THE FOLLOWING EX-CLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED UNDER THIS PART V.**

This coverage does not apply to:

1. the cost of purchasing parts, fluid, lubricants, fuel or replacement keys, or the labor to make replacement keys;

2. installation of products or material not related to the disablement;

3. labor not related to the disablement;

4. labor on a **covered disabled vehicle** for any time period in excess of sixty (60) minutes per disablement;

5. towing or storage related to impoundment abandonment, illegal parking, or other violations of law;

2. any other applicable physical damage insur-ance.

   owner of a non-owned vehicle or trailer; and

## APPRAISAL

If we cannot agree with **you** on the amount of a **loss**, then **we** and **you** may mutually agree to an appraisal of the **loss**. If the parties agree to an appraisal, each party shall appoint a competent and impartial appraiser. The appraisers will determine the amount of **loss**. If they fail to agree, the dis-agreement will be submitted to a qualified and impar-tial umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire with-in fifteen (15) days, **we** or **you** may request that a judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of **loss**. The amount of **loss** agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. Payment of the umpire and all other expenses of the appraisal will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART V – ROADSIDE ASSISTANCE COVERAGE

### INSURING AGREEMENT

If **you** pay the premium for Roadside Assistance Coverage, **we** will pay for **our** authorized service representative to provide the following services when necessary due to a **covered emergency**:

1. towing of a **covered disabled vehicle** to the nearest qualified repair facility, and

2. labor on a **covered disabled vehicle** at the place of disablement.

If a **covered disabled vehicle** is towed to any place other than the nearest qualified repair facility, **you** will be responsible for any additional mileage charges incurred.

6. assistance with jacks, levelers, airbags, or awnings;
7. towing from a service station, garage, or repair shop;
8. labor or repair work performed at a service station, garage, or repair shop;
9. vehicle storage charges;
10. a second service call or tow for a single disablement;
11. disablement that occurs on roads not regularly maintained, sand beaches, open fields, or areas designated as not passable due to construction;
12. mounting or removing of snow tires or chains;
13. tire repair;
14. repeated service calls for a covered disabled vehicle in need of routine maintenance or repair; or
15. disablement that results from an intentional or willful act or action by you, a relative or the operator of a covered disabled vehicle.

## UNAUTHORIZED SERVICE PROVIDER

When service is rendered by a provider in the business of providing roadside assistance and towing services, other than one of our authorized service representatives, we will only reimburse reasonable charges, as determined by us, for:
1. towing of a covered disabled vehicle to the nearest qualified repair facility; and
2. labor on a covered disabled vehicle at the place of disablement;
which is necessary due to a covered emergency.

## OTHER INSURANCE          PROG 082

Any coverage provided under this Part V for service rendered by an unauthorized service provider will be excess over any other collectible insurance or towing protection coverage.

## PART VI - PERSONAL EFFECTS COVERAGE

### INSURING AGREEMENT - REPLACEMENT COST PERSONAL EFFECTS COVERAGE

Subject to the Limits of Liability, if you pay the premium for Replacement Cost Personal Effects Cov-

36

erage, we will pay for a covered loss to unscheduled personal effects and non-owned personal effects which occurs while those items are located:
1. inside the covered vehicle; or
2. on the parcel of real property that is:
   a. owned by you or reserved for your exclusive use; and
   b. occupied by the covered vehicle.

### INSURING AGREEMENT - SCHEDULED PERSONAL EFFECTS COVERAGE

Subject to the Limits of Liability, if you pay the premium for Scheduled Personal Effects Coverage, we will pay for a covered loss to scheduled personal effects which occurs while those items are:
1. inside the covered vehicle;
2. on the parcel of real property that is:
   a. owned by you or reserved for your exclusive use; and
   b. occupied by the covered vehicle;
3. inside a secured storage location; or
4. in any other location within the policy territory specified in the General Provisions of this policy if no homeowners, tenants, renters, condominium, unit-owners, cooperative, recreational, or other insurance applies to cover items or scheduled personal effects.

### INSURING AGREEMENT - FULL TIMER'S SECURED STORAGE PERSONAL EFFECTS COVERAGE

Subject to the Limits of Liability, if you pay the premium for Full Timer's Secured Storage Personal Effects Coverage, we will pay for a covered loss to unscheduled personal effects inside a secured storage location.

### ADDITIONAL DEFINITIONS

When used in this Part VI, whether in the singular, plural, or possessive:
1. "Covered loss" means a loss caused by one or more of the perils listed under the Covered Loss provision of this Part VI.
2. "Non-owned personal effects" means any personal property not owned by you or a relative

37          PROG 083

tive, which is lawfully in the possession of you or a relative, other than:

a. self-propelled vehicles or watercraft;
b. deeds, documents, records, bills, money, coin collections, stamp collections, negotiable instruments, notes, securities, or other evidence of debt;
c. any property used in a business;
d. any property held for rental to others by you or a relative;
e. any property located within the insured person's permanent or primary residence other than the covered vehicle;
f. any property of your employees; and
g. animals (including birds and fish).

3. "Personal effects" means any personal property owned by you or a relative other than:

a. watercraft, golf carts or other self-propelled vehicles, except electric wheelchairs or other self-propelled vehicles that are:
  (i) designed for assisting the physically impaired;
  (ii) designed to operate off of the public roads; and
  (iii) not subject to motor vehicle registration;
b. deeds, documents, records, bills, money (other than coin collections), negotiable instruments, notes, securities, or other evidence of debt;
c. any property used in a business;
d. any property held for rental to others by you or a relative;
e. any property located within the insured's permanent or primary residence other than the covered vehicle; and
f. animals (including birds and fish).

4. "Scheduled personal effects" means any personal effects that have been listed with a declared value on the personal effects schedule contained in our records.

5. "Secured storage location" means a segregated portion of a building used in a commercial storage business where access to your personal effects is restricted to you or your designated representative by a locked:

a. door;
b. cage; or
c. wall.

PROG 084

38

## COVERED LOSS

A covered loss under this Part VI must be caused by one or more of the following perils:

1. fire or lightning;
2. explosion, smoke, or charring;
3. windstorm, hail, earthquake, earth movement, volcanic explosion, lava flow, landslide, flood, rain, snow, sand, sleet or dust. However, this does not include loss to items in the covered vehicle or secured storage location caused by rain, snow, sand, sleet or dust unless the covered vehicle or secured storage location is first damaged by a direct, accidental force, creating an opening through which the rain, snow, sand, sleet or dust enters;
4. riot or civil commotion;
5. vandalism, but not when caused by, or at the direction of, you or a relative;
6. aircraft or missiles;
7. objects falling on:
  a. the covered vehicle;
  b. unscheduled personal effects, scheduled personal effects or non-owned personal effects, if not in the covered vehicle, but located on the parcel of real property that is:
    (i) owned by you or reserved for your exclusive use; and
    (ii) occupied by the covered vehicle; or
  c. the secured storage location;
8. sudden impact caused by an animal;
9. any loss to unscheduled personal effects, scheduled personal effects or non-owned personal effects if caused by a loss to the covered vehicle for which Comprehensive Coverage or Collision Coverage is provided under Part IV - Damage To A Vehicle. This peril does not apply to Full Timer's Secured Storage Personal Effects Coverage; or
10. theft of:
  a. unscheduled personal effects, scheduled personal effects or non-owned personal effects from:
    (i) inside:
      (a) the covered vehicle;
      (b) a trailer used with the covered vehicle while located on the parcel of real property owned by you, or

PROG 085

39

reserved for your exclusive use, that is occupied by the covered vehicle; or

(c) an enclosed structure owned by you, or reserved for your exclusive use, that is located on the parcel of real property occupied by the covered vehicle;

if the theft is supported by evidence of forcible entry; or

(i) anywhere else on the parcel of real property owned by you, or reserved for your exclusive use, that is occupied by the covered vehicle;

b. unscheduled personal effects or scheduled personal effects from a secured storage location if the theft is supported by evidence of forcible entry; and

c. scheduled personal effects from any other location within the policy territory specified in the General Provisions of this policy if no homeowners, tenants, renters, condominium, unit-owners, cooperative, recreational, or other insurance applies to cover such items of scheduled personal effects.

Loss caused by theft must be reported to the police or civil authority within twenty-four (24) hours or as soon as practicable after the loss.

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED UNDER THIS PART VI.

Coverage under this Part VI does not apply for loss:

1. caused by birds, vermin, rodents, insects or other animals. However, this exclusion does not apply when a bird or animal causes a loss by collision or sudden impact;

2. for diminution of value;

3. that is confined to scorching, marring, scratching or breakage that is not a result of a covered loss;

4. due to theft of any of the following items while not in a covered vehicle, trailer, or an enclosed structure owned by you or reserved for your exclusive use that is located on the parcel of real

3

property occupied by a covered vehicle:

a. travel tickets, passports, and manuscripts;

b. coin collections and equipment, and stamp collections and collecting supplies;

5. due to theft of any of the following items while not in a covered vehicle, trailer, or an enclosed structure owned by you or reserved for your exclusive use that is located on the parcel of real property occupied by a covered vehicle:

a. all cameras and equipment used with cameras;

b. any jewelry, art, heirlooms, antiques, furs (including any article containing 'fur' which represents its principal value), fine china and crystal;

c. personal computers, monitors, printers, word processors and data media used for personal purposes;

d. devices or instruments for the transmitting, recording, receiving or reproduction of sound or pictures that are not permanently installed in a covered vehicle including accessories and antennas, tapes, wires, records, disks or other media for use with any such device or instrument; or

e. silverware, silver-plated ware, goldware, gold-plated ware and pewterware (including, but not limited to, flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter).

However, this exclusion does not apply if you have paid the premium for:

a. Scheduled Personal Effects Coverage, and the items are scheduled personal effects which:

(i) are stolen from a secured storage location if the theft is supported by evidence of forcible entry; or

(ii) are stolen from any other location within the policy territory specified in the General Provisions of this policy and no homeowners, tenants, renters, condominium, unit-owners, cooperative, recreational, or other insurance applies to cover such items of scheduled personal effects; or

b. Full Timer's Secured Storage Personal Effects Coverage, and such items are

41

d. dampness of atmosphere or extremes of temperature; or

e. deterioration;

12. caused directly or indirectly by mold, mildew or fungus, including any type or form of:

a. decomposing or disintegrating organic material or microorganism;

b. organic surface growth on moist, damp, or decaying matter;

c. yeast or spore-bearing plant-like organism; or

d. spores, scents, toxins, bacteria, viruses, or any other by-products produced or released by any mold, mildew, fungus, or other microbes.

However, this exclusion does not apply to loss caused by mold, mildew or fungus, if such loss is caused by any other loss covered under this Part VI;

13. caused by the order of any governmental or civil authority to destroy, confiscate or seize any property otherwise covered under this Part VI because you or any relative engaged in illegal activities;

14. to any anti-sway, tow or torsion bars, tow hitches, tow dollies, or other towing devices, that are covered under Part IV - Damage To A Vehicle;

15. to scheduled personal effects while located in your permanent or primary residence, other than a covered vehicle, if any other insurance applies to the loss;

16. to personal property, other than scheduled personal effects, while located in your permanent or primary residence, other than a covered vehicle; or

17. caused directly or indirectly by:

a. war (declared or undeclared), including civil war;

b. warlike action by any military force of any government, sovereign or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack;

c. insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts; or

PROG 089

43

stolen from a secured storage location and the theft is supported by evidence of forcible entry;

6. caused by an intentional act of you or a relative or at the direction of you or a relative;

7. sustained while the covered vehicle is being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of magazines, newspapers, food, or any other products. This exclusion does not apply:

a. to shared-expense transportation pools; or

b. when a driver hired by you and listed in our records as a regular driver of a covered vehicle is operating that covered vehicle to transport you or a relative;

8. arising out of or related to a business;

9. resulting in, arising out of or related to any of the following:

a. consequential damages;

b. the cost of recreating any records or documentation; or

c. business interruption;

10. that is due and confined to:

a. wear and tear;

b. prior loss or damage;

c. manufacturing defects;

d. improper or lack of routine maintenance, or failure to perform maintenance as prescribed by the manufacturer;

e. contamination or pollutants;

f. freezing;

g. gradual accumulation of snow or ice; or

h. scorching, marring, scratching, or breakage of property. However, this exclusion does not apply to scorching, marring, scratching or breakage caused by malicious mischief, vandalism, riot, civil commotion, fire, lightning, or other covered loss; or

i. mechanical or electrical breakdown or failure.

This exclusion does not apply if the loss results from theft;

11. caused directly or indirectly by any of the following:

a. water leakage or seepage unless caused by any other loss covered under this Part VI;

b. wet or dry rot;

c. rust or corrosion;

PROG 088

42

3

d. any intentional discharge, dispersal or release of radioactive, nuclear, pathogenic, poisonous biological, chemical or hazardous material for any purpose other than its safe and useful purpose.

## LIMITS OF LIABILITY          PROG 090

1. Payments for loss covered under this Part VI:
   a. are subject to a $100 deductible that shall apply to each loss. However, no deductible shall apply under this Part VI if you have incurred a deductible under Part IV - Damage To A Vehicle in the same loss; and
   b. shall be reduced by the property's salvage value if you or the owner retain the salvage.

2. The aggregate limit of liability for loss to unscheduled personal effects will be the lowest of:
   a. the amount shown on the Declarations Page for:
      (i) Replacement Cost Personal Effects Coverage; or
      (ii) Full Timer's Secured Storage Personal Effects Coverage;
      whichever is applicable;
   b. the cost of repairing the item or items;
   c. the cost of replacing the item or items;
   d. if the loss occurs outside a covered vehicle, to unscheduled personal effects, twenty-five percent (25%) of the limit of liability shown on the Declarations Page for Replacement Cost Personal Effects Coverage;
   e. $500 per item; or
   f. the applicable group limit set forth below.

3. Subject to the aggregate limit of liability shown on the Declarations Page for Replacement Cost Personal Effects Coverage or Full Timer's Secured Storage Personal Effects Coverage, whichever is applicable, we will pay no more than $1,000 for loss to any group of unscheduled personal effects from the following groups:
   a. travel tickets, passports, and manuscripts;
   b. coin collections and equipment, and stamp collections and collecting supplies;

c. trading cards, sports memorabilia, comic books, and other collectibles;
d. all cameras and equipment used with cameras;
e. jewelry, watches, gems, precious and semi-precious stones, art, heirlooms, antiques, furs (including any article containing fur which represents its principal value); or
f. non-motorized recreational equipment, firearms, firearm related equipment, ammunition, and fishing, golf and skiing equipment.

4. Subject to the aggregate limit of liability shown on the Declarations Page for Replacement Cost Personal Effects Coverage or Full Timer's Secured Storage Personal Effects Coverage, whichever is applicable, we will pay no more than $3,000 for loss to any group of unscheduled personal effects from the following groups:
   a. electronic data processing system equipment, including, but not limited to, personal computers, monitors, printers, word processors, data media used for personal purposes and the recording or storage media used with that equipment;
   b. devices or instruments for the transmitting, recording, receiving or reproduction of sound or pictures that are not permanently installed in a covered vehicle, including accessories and antennas, tapes, wires, records, disks or other media for use with any such device or instrument;
   c. silverware, silver-plated ware, goldware, gold-plated ware, fine china, crystal, and pewterware (including, but not limited to, flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter);
   d. tools; or
   e. If Full Timer's Secured Storage Personal Effects Coverage applies, we will pay no more than $3,000 for loss to any group of unscheduled personal effects from the additional following groups:
      (i) household furnishings including furniture, lamps, paintings and rugs;

    (ii) appliances and other equipment used at, and in the normal maintenance of, a residence; or

    (iii) lawn and garden equipment.

5. Subject to the limit of liability shown on the Declarations Page for Replacement Cost Personal Effects Coverage, for loss to non-owned personal effects, we will pay the lowest of:

    a. the aggregate of $500 per loss to non-owned personal effects;

    b. the cost of repairing the item or items;

    c. the cost of replacing the item or items; or

    d. if the loss occurs outside a covered vehicle to non-owned personal effects, twenty-five percent (25%) of the limit of liability shown on the Declarations Page for Replacement Cost Personal Effects Coverage.

6. Subject to the limit of liability shown on the Declarations Page for Scheduled Personal Effects Coverage, for loss to scheduled personal effects, we will pay the lowest of:

    a. the cost of repairing the item or items;

    b. the cost of replacing the item or items; or

    c. the declared value for the item or items of scheduled personal effects.

    The declared value of all scheduled personal effects must be supported by an appraisal for each item. Loss to an item of scheduled personal effects that does not have an appraisal will be treated as a loss to unscheduled personal effects.

7. Subject to all other applicable Limits of Liability, our limit of liability for loss to part of a pair or set, series of objects, pieces or panels is the lowest of:

    a. the cost to repair or replace the part that restores the set to its appearance and function before the loss;

    b. the difference between the actual cash value of the set before the loss and after the loss; or

    c. the cost of a substitute portion that reasonably matches the rest of the set.

    We have no obligation to replace the entire set if a portion is lost or damaged.

8. Payments for loss under Replacement Cost Personal Effects Coverage and Scheduled

Personal Effects Coverage will be excess over any loss paid or payable under Full Timer's Shed Contents Coverage in Part VII – Full Timer's Package.

9. No one will be entitled to duplicate payment for the same elements of loss.

**OTHER INSURANCE**

If there is other similar insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability. However, any insurance **we** provide under this Part VI will be excess over any other collectible source of recovery including, but not limited to, any coverage provided by homeowners, tenants, renters, condominium, unit-owners, cooperative, recreational, or other insurance.

**PAYMENT OF LOSS**

At **our** expense, **we** may return any recovered stolen property to **you** or to the address shown on the Declarations Page, with payment for any damage resulting from the theft. **We** may keep all or part of the property at the agreed or appraised value. **We** may settle any loss with **you** or the **owner** or lienholder of the property. **We** may make payment for a partial loss covered under this Part VI directly to the repair facility with **your** consent.

**NO BENEFIT TO BAILEE**

Coverage under this Part VI will not directly or indirectly benefit any carrier or other bailee for hire.

**APPRAISAL**          PROG 093

If **we** cannot agree with **you** on the amount of a loss, then **we** and **you** may mutually agree to an appraisal of the loss. If the parties agree to an appraisal, each party shall appoint a competent and impartial appraiser. The appraisers will determine the amount of loss. If they fail to agree, the disagreement will be submitted to a qualified and impartial umpire chosen by the appraisers. If the two appraisers are unable to agree upon an umpire within fifteen (15) days, **we** or **you** may request that a

judge of a court of record, in the county where **you** reside, select an umpire. The appraisers and umpire will determine the amount of loss. The amount of loss agreed to by both appraisers, or by one appraiser and the umpire, will be binding. **You** will pay **your** appraiser's fees and expenses. **We** will pay **our** appraiser's fees and expenses. Payment of the umpire and all other expenses of the appraisal will be shared equally between **us** and **you**. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

## PART VII.- FULL TIMER'S PACKAGE

### INSURING AGREEMENT – FULL TIMER'S PACKAGE

If **you** pay the premium for the Full Timer's Package, subject to the Limits of Liability for each coverage, **we** will provide Full Timer's Personal Liability Coverage, Full Timer's Medical Payments Coverage, Full Timer's Loss Assessment Coverage, and Full Timer's Shed Contents Coverage.

### INSURING AGREEMENT - FULL TIMER'S PERSONAL LIABILITY COVERAGE

Subject to the Limits of Liability for Full Timer's Personal Liability Coverage, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury** or **property damage**, as well as punitive damages due for wrongful death, for which an **insured person** becomes legally responsible because of an **accident** or **occurrence**. Damages include prejudgment interest awarded against an **insured person**.

4.   **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for damages covered by this Part VII. **We** have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not insured or covered under this policy.

5.   Unless paid pursuant to another coverage provided in this policy, **we** will pay, in addition to **our** limits of liability:
1.   all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;
2.   interest accruing after entry of judgment, until

we have paid or tendered that portion of the judgment which does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured person**;

3.   premiums on appeal bonds or attachment bonds required in any lawsuit **we** defend. **We** have no duty to purchase bonds in an amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4.   up to $250 for a bail bond required because of an **accident** or **occurrence**. **We** have no duty to apply for or furnish this bond;

5.   to the lowest of:
     a.   the replacement cost at the time of the **loss**;
     b.   the full cost of repair; or
     c.   $1,000 for any one **loss**;
     for **property damage** to property of others caused by an **insured person** that occurs on an **insured location** if no other coverage under this policy applies; and

6.   reasonable expenses, including loss of earnings up to $200 a day, incurred at **our** request.

### INSURING AGREEMENT - FULL TIMER'S MEDICAL PAYMENTS COVERAGE

Subject to the Limits of Liability for Full Timer's Medical Payments Coverage, **we** will pay the **usual and customary charge** for reasonable and necessary expenses for medical and funeral services incurred within three (3) years from the date of an **accident** or **occurrence** by any person, other than **you** or a **relative**, who sustains **bodily injury**:

1.   while on an **insured location** with **your** express or implied permission; or

2.   while off the **insured location**, if the **bodily injury**:
     a.   arises out of a condition on the **insured location**;
     b.   is caused by the activities of **you** or a **relative**; or
     c.   is caused by any animal owned by or in the care of **you** or a **relative**.

Any dispute as to the usual and customary charge will be resolved between the service provider and **us**.

Any payment made under Full Timer's Medical Payments Coverage is not an admission of liability.

## INSURING AGREEMENT – FULL TIMER'S LOSS ASSESSMENT COVERAGE

Subject to the Limits of Liability for Full Timer's Loss Assessment Coverage, **we** will pay up to $5,000 for **your** share of any loss assessment charged during the policy period against **you** by a corporation or association of property owners, when the assessment is made as a result of:

1. direct **loss** to property owned by all members collectively, from a cause of **loss** not excluded under Part IV – Damage To A Vehicle; or

2. liability for an act of a director, officer or trustee acting as a director, officer or trustee, provided:

   a. the director, officer or trustee is elected by the members of a corporation or association of property owners; and

   b. the director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against **you** as owner or tenant of the **insured location**.

**We** do not cover loss assessments charged against **you**, or a corporation or association of property owners, by any governmental body.

## INSURING AGREEMENT – FULL TIMER'S SHED CONTENTS COVERAGE

4. Subject to the Limits of Liability for Full Timer's Shed Contents Coverage, **we** will pay up to $5,000 for a covered **loss** to personal effects while inside a shed, regardless of the location of the covered vehicle. However, no coverage will be provided under Full Timer's Shed Contents Coverage for:

   1. personal effects covered under Scheduled Personal Effects Coverage; or

   2. any loss excluded under Part VI – Personal Effects Coverage.

## ADDITIONAL DEFINITIONS

When used in this Part VII, whether in the singular, plural, or possessive:

1. "Aircraft" means any contrivance or device used for flight, parachuting, gliding or soaring. However, "aircraft" does not include a model or hobby device that is not capable of carrying or transporting people or cargo.

2. "Covered loss" means a **loss** caused by one or more of the perils listed under the Covered Loss provision of Part VI – Personal Effects Coverage.

3. "Dead storage" means placing an item or object that is entirely inoperable, or incapable of functioning in its intended manner, in a location where it is beyond everyday use or handling.

4. "Insured location" means:

   a. the place where a covered **vehicle** is parked off public roads and being used as **your** primary residence;

   b. the portion of vacant land owned by or rented to **you**, other than farm land, upon which a covered **vehicle** is regularly parked; or

   c. any part of the premises that is not:

      (i) owned by **you**; nor

      (ii) rented to **you** for business purposes; but only if and while **you** are residing in a covered **vehicle** on such premises.

5. "Insured person" means:

   a. **you** or a **relative**;

   b. any person or organization legally responsible for animals or watercraft owned by **you** or a **relative** if that person or organization is using these animals or watercraft with the express or implied permission of **you** or a **relative**; and

   c. with respect to any motorized **vehicle** to which this policy applies, any other person using the motorized **vehicle** on an **insured location** with **your** express or implied permission.

6. "Motor vehicle" means:

   a. a covered **vehicle**, except while it is parked off public roads and is being used as **your** residence;

   b. any other motorized land vehicle designed

for travel on public roads and subject to motor vehicle registration;

c. a trailer or semitrailer designed for travel on public roads which is subject to motor vehicle registration;

d. a motorized golf cart, snowmobile, motorcycle, dirt bike, other motorized bicycle, motorized tricycle, amphibious device, all-terrain vehicle, or any other land vehicle or other similar type equipment owned by an Insured person and designed or used for recreational or utility purposes off public roads; and

e. any vehicle while being towed by or carried on a vehicle defined as a motor vehicle above.

However, "motor vehicle" does not include:

a. a motorized land vehicle which is not designed for use on public roads nor subject to motor vehicle registration, if:
  (i) in dead storage on an Insured location;
  (ii) used to service an Insured location; or
  (iii) designed for assisting the physically impaired;

b. a motorized land vehicle which is designed for recreational use off public roads and is not subject to motor vehicle registration, if:
  (i) not owned by an Insured person; or
  (ii) owned by an Insured person and on an Insured location; or

c. a boat trailer, car tow dolly, or utility trailer owned by you or a relative, while not being towed by or carried on a motor vehicle.

4. "Occurrence" means an unexpected and unintended event, including continuous or repeated exposure to substantially the same general harmful conditions, that results in bodily injury or property damage during the policy period. All bodily injury and property damage resulting from continuous or repeated exposure to substantially the same general harmful conditions is deemed to be one occurrence.

5. "Personal effects" means any personal property owned by you or a relative other than:

a. watercraft, golf carts or other self-propelled

vehicles, except electric wheelchairs or other self-propelled vehicles that are:
  (i) designed for assisting the physically impaired;
  (ii) designed to operate off of the public roads; and
  (iii) not subject to motor vehicle registration;

b. deeds, documents, records, bills, money (other than coin collections), negotiable instruments, notes, securities, or other evidence of debt;

c. any property used in a business;

d. any property held for rental to others by you or a relative;

e. any property located within the insured's permanent or primary residence other than the covered vehicle; and

f. animals (including birds and fish).

9. "Property damage" means physical damage to, or destruction or loss of use of, tangible property.

10. "Shed" means a non-commercial building specifically designed for storage which:

a. is owned, rented, or leased by you;

b. contains personal effects; and

c. is restricted to you or your designated representative by a locked door.

"Shed" does not include a building used in a commercial storage business.

11. "Usual and customary charge" means an amount which we determine represents a customary charge for services in the geographical area in which the service is rendered. We shall determine the usual and customary charge through the use of independent sources of our choice.

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED UNDER THIS PART VII.

Coverage under this Part VII does not apply to:

1. any bodily injury or property damage arising out of the ownership, maintenance, use, control, entrustment, supervision, loading or unloading of:

a. an aircraft;

b. a motor vehicle by any Insured person,

including a motor vehicle rented or loaned to any Insured person; or

c. a watercraft or hovercraft owned by or rented to any Insured person which:

   (i) is powered by a motor of more than fifty (50) horsepower;

   (ii) is a sailing vessel twenty-six (26) feet or more in overall length; or

   (iii) is a personal watercraft.

   However, this exclusion does not apply while the watercraft or hovercraft is in dead storage;

2. any bodily injury or property damage arising out of rendering or failing to render professional services;

3. any bodily injury or property damage arising out of or occurring at any premises:

   a. owned by an Insured person;

   b. rented to an Insured person for a term that exceeds one hundred eighty (180) days; or

   c. rented to others by an Insured person; that is not an Insured location;

4. bodily injury or property damage due to a nuclear reaction or radiation;

5. bodily injury or property damage for which insurance is afforded under a nuclear energy liability insurance contract;

6. bodily injury or property damage arising out of the course of employment or business pursuits of an Insured person;

7. bodily injury to an employee of an Insured person arising out of or within the course of employment, except for domestic employees if benefits are neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;

8. any employee with respect to injury, sickness, disease or death of a fellow employee injured in the course of his or her employment in an accident or occurrence arising out of or in the course of the business of their common employer;

9. property damage to any property owned by, rented to, being transported by, used by, or in the charge of an Insured person or a person residing in your household;

10. bodily injury or property damage which is:

   a. either expected or intended by an Insured person; or

   b. the result of a willful or malicious act by an Insured person, or at the direction of an Insured person;

   no matter at whom or at what the act was directed. However, this exclusion does not apply to bodily injury resulting from the use of reasonable force by an Insured person to protect persons or property;

11. any liability assumed by an Insured person under any contract or agreement;

12. bodily injury or property damage arising out of an accident or occurrence involving a vehicle while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to you, a relative, or an agent or employee of you or a relative, when using a covered vehicle;

13. bodily injury or property damage arising out of an accident or occurrence involving a vehicle while entrusted to a person or business for the purpose of selling, renting or brokering the sale of the vehicle. However, this exclusion does not apply to you or a relative when using a covered vehicle;

14. bodily injury or property damage while the covered vehicle is rented or leased to others;

15. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

16. bodily injury or property damage that arises out of the transmission of a communicable disease, bacterium, parasite, virus, or other organism, caused wholly or in part by the actions of an Insured person;

17. bodily injury due to any of the following diseases transmitted wholly or in part by the actions of an Insured person:

   a. Acquired Immune Deficiency Syndrome (AIDS);

   b. AIDS Related Complex (ARC);

   c. Human Immunodeficiency Virus (HIV); or

   d. any resulting or related symptoms, effects, conditions, diseases, or illnesses;

18. bodily injury or property damage that arises out of the actual, alleged, or threatened dis-

charge, dispersal, seepage, migration, release, or escape of pollutants;

19. **bodily injury** or **property damage** arising out of any **loss**, cost, or expense relating to pollutant testing, monitoring, cleanup, removal, containment, treatment, detoxification, neutralization, remediation or in any way responding to or assessing the effects of **pollutants**, as the result of:
    a. any governmental directive or request; or
    b. any claim or lawsuit by or on behalf of a governmental authority;

20. **bodily injury** or **property damage** arising out of sexual molestation, sexual harassment, corporal punishment, or physical or mental abuse;

21. **bodily injury** or **property damage** resulting from any criminal act committed by or with the knowledge or consent of an **insured person**;

22. **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s), as defined by the Federal Food and Drug Law, 21 U.S.C.A. Sections 811 and 812. Controlled Substances include, but are not limited to, cocaine, LSD, marijuana and all narcotic drugs. This exclusion does not apply to the use of prescription drugs by a person following the orders of a licensed physician;

23. **bodily injury** or **property damage** if the initial injurious act was committed prior to the effective date of **your** policy;

24. **bodily injury** or **property damage** arising out of the use of a covered vehicle for transportation or travel on public roads;

25. **bodily injury** to an **insured person**;

26. any fines or penalties; or

27. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened migration, release, existence, or presence of or actual, alleged, or threatened exposure to any of the following:
    a. mold, mildew or fungus, including any type or form of:
       (i) decomposing or disintegrating organic material or microorganism;
       (ii) organic surface growth on moist, damp, or decaying matter;

(iii) yeast or spore-bearing plant-like organism; or
(iv) spores, scents, toxins, bacteria, viruses, or any other by-products produced or released by any mold, mildew, fungus, or other microbes;
b. wet or dry rot;
c. rust; or
d. dampness of atmosphere, extremes of temperature, or deterioration.

However, this exclusion does not apply to **property damage** if such **loss** is caused by any other **loss** covered under this Part VII.

None of these exclusions shall apply to **loss** under Full Timer's Shed Contents Coverage.

## LIMITS OF LIABILITY

With respect to Full Timer's Personal Liability Coverage, the following provisions apply:

1. The limit of liability shown on the **Declarations Page** is the most **we** will pay for any one **accident** or **occurrence** regardless of the number of:
   a. claims made;
   b. covered vehicles;
   c. **insured persons**;
   d. lawsuits brought;
   e. vehicles involved in an **accident** or **occurrence**; or
   f. premiums paid.

2. If the **Declarations Page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all damages resulting from any one **accident** or **occurrence**.

3. If **your Declarations Page** shows a split limit:
   a. the amount shown for "each person" is the most **we** will pay for all damages due to a **bodily injury** to one person;
   b. subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay (or all damages due to **bodily injury** sustained by two or more persons in any one **accident** or **occurrence**; and
   c. the amount shown for "property damage" is the most **we** will pay for the total of all prop-

erty damage for which an insured person becomes liable as a result of any one accident or occurrence.

4. The "each person" limit of liability includes the total of all claims made for bodily injury against an insured person and all claims of others derived from such bodily injury, including, but not limited to, emotional injury or mental anguish resulting from the bodily injury of another, from witnessing the bodily injury of another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

With respect to Full Timer's Medical Payments Coverage, the following provisions apply:

1. Subject to our aggregate limit of $50,000 for all persons injured in any one accident or occurrence, we will pay up to $5,000 to each person injured in any one accident or occurrence. This is the most we will pay regardless of the number of:
   a. claims made;
   b. covered vehicles;
   c. insured persons;
   d. lawsuits brought;
   e. vehicles involved in an accident or occurrence; or
   f. premiums paid.
2. Any amount payable shall be reduced by any amount paid under Part II - Medical Payments Coverage.

With respect to Full Timer's Loss Assessment Coverage, regardless of the number of assessments, the limit of $5,000 is the most we will pay for loss arising out of:

1. one accident, including continuous or repeated exposure to substantially the same general harmful conditions;
2. any one loss; or
3. a covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

With respect to Full Timer's Shed Contents Coverage, the Limits of Liability under Part VI – Personal Effects Coverage shall apply, not to exceed $5,000.

No one will be entitled to duplicate payments for the same elements of damages.

No coverage is provided under this Part VII for bodily injury or property damage covered under Part I - Liability To Others or Part II - Medical Payments Coverage.

## OTHER INSURANCE

Any coverage we provide under this Part VII is excess over any other applicable or collectible insurance or bond. If there is other excess insurance or bond, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## PART VIII – VACATION LIABILITY COVERAGE

## INSURING AGREEMENT

Subject to the Limits of Liability, if you pay the premium for Vacation Liability Coverage, we will pay damages, other than punitive or exemplary damages, for bodily injury or property damage, as well as punitive damages due for wrongful death, for which an insured person becomes legally responsible because of an accident or occurrence that occurs while a covered vehicle is being used as, and at, a temporary residence. Damages include prejudgment interest awarded against an insured person.

We will settle or defend, as we consider appropriate, any claim or suit asking for damages covered by this Part VIII. We have no duty to defend any suit or settle any claim for bodily injury or property damage not insured or covered under this policy.

Unless paid pursuant to another coverage provided in this policy, we will pay, in addition to our limits of liability:

1. all expenses that we incur in the settlement of any claim or defense of any lawsuit;
2. interest accruing after entry of judgment, until we have paid or tendered that portion of the judgment which does not exceed our Limit of Liability. This does not apply if we have not been given notice of suit or the opportunity to defend an insured person;

3. premiums on appeal bonds or attachment bonds required in any lawsuit we defend. We have no duty to purchase bonds in an amount exceeding our Limit of Liability, and we have no duty to apply for or furnish these bonds;

4. up to $250 for a bail bond required because of an accident or occurrence arising out of the ownership, maintenance, or use of a covered vehicle while being used as, and at, a temporary residence. We have no duty to apply for or furnish this bond;

5. up to the lowest of:
   a. the replacement cost at the time of the loss;
   b. the full cost of repair; or
   c. $1,000 for any one loss;
   for property damage to property of others caused by an insured person that occurs while a covered vehicle is being used as, and at, a temporary residence if no other coverage under this policy applies; and

6. reasonable expenses, including loss of earnings up to $200 a day, incurred at our request.

## ADDITIONAL DEFINITIONS

When used in this Part VIII, whether in the singular, plural, or possessive:

1. "Aircraft" means any contrivance or device used for flight, parachuting, gliding or soaring. However, "aircraft" does not include a model or hobby device that is not capable of carrying or transporting people or cargo.

2. "Dead storage" means placing an item or object that is entirely inoperable, or incapable of functioning in its intended manner, in a location where it is beyond everyday use or handling.

3. "Insured person" means:
   a. you or a relative;
   b. any person or organization legally responsible for animals or watercraft that are owned by you or a relative if that person or organization is using these animals or watercraft with the express or implied permission of you or a relative; and
   c. with respect to any motorized vehicle to which this policy applies, any other person using the motorized vehicle at a temporary

residence with your express or implied permission.

4. "Motor vehicle" means:
   a. a covered vehicle, except while it is parked off public roads and is being used as your temporary residence;
   b. any other motorized land vehicle designed for travel on public roads and subject to motor vehicle registration;
   c. a trailer or semitrailer designed for travel on public roads which is subject to motor vehicle registration;
   d. a motorized golf cart, snowmobile, motorcycle, dirt bike, other motorized bicycle, motorized tricycle, amphibious device, all-terrain vehicle, or any other land vehicle or other similar type equipment owned by an insured person and designed or used for recreational or utility purposes off public roads; and
   e. any vehicle while being towed by or carried on a vehicle defined as a motor vehicle above.

However, "motor vehicle" does not include:
   a. a motorized land vehicle which is not designed for use on public roads nor subject to motor vehicle registration, if:
      (i) in dead storage at a temporary residence;
      (ii) used to service a temporary residence; or
      (iii) designed for assisting the physically impaired;
   b. a motorized land vehicle which is designed for recreational use off public roads and is not subject to motor vehicle registration, if:
      (i) not owned by an insured person; or
      (ii) owned by an insured person and at a temporary residence; or
   c. a boat trailer, car tow dolly, or utility trailer owned by you or a relative, while not being towed by or carried on a motor vehicle.

5. "Occurrence" means an unexpected and unintended event, including continuous or repeated exposure to substantially the same general harmful conditions, that results in bodily injury or property damage during the policy period.

All bodily injury and property damage resulting from continuous or repeated exposure to substantially the same general harmful conditions is deemed to be one occurrence.

6. "Property damage" means physical damage to, or destruction or loss of use, of tangible property.

7. "Temporary residence" means a residence or premises that is away from, and not used as, your permanent or primary residence. A "temporary residence" includes a parcel of real property that is:
   a. owned by you or reserved for your exclusive use; and
   b. occupied by the covered vehicle.

EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED UNDER THIS PART VII.

Coverage under Part VIII does not apply to:
1. any bodily injury or property damage arising out of the ownership, maintenance, use, control, entrustment, supervision, loading or unloading of:
   a. an aircraft;
   b. a motor vehicle by any insured person, including a motor vehicle rented or loaned to any insured person; or
   c. a watercraft or hovercraft owned by or rented to any insured person which:
      (i) is powered by a motor of more than fifty (50) horsepower;
      (ii) is a sailing vessel twenty-six (26) feet or more in overall length; or
      (iii) is a personal watercraft.
   However, this exclusion does not apply while the watercraft or hovercraft is in dead storage;
2. any bodily injury or property damage arising out of rendering or failing to render professional services;
3. any bodily injury or property damage arising out of or occurring at any premises:
   a. owned by an insured person;
   b. rented to an insured person for a term that exceeds one hundred eighty (180) days; or
   c. rented to others by an insured person; that is not a temporary residence;

PROG 108

62

4. bodily injury or property damage due to a nuclear reaction or radiation;
5. bodily injury or property damage for which insurance is afforded under a nuclear energy liability insurance contract;
6. bodily injury or property damage arising out of the course of employment or business pursuits of an insured person;
7. bodily injury to an employee of an insured person arising out of or within the course of employment, except for domestic employees if employment is neither paid nor required to be provided under workers' compensation, disability benefits, or similar laws;
8. any employee with respect to injury, sickness, disease or death of a fellow employee injured in the course of his or her employment in an accident or occurrence arising out of or in the course of the business of their common employer;
9. property damage to any property owned by, rented to, being transported by, used by, or in the charge of an insured person or a person residing in your household;
10. bodily injury or property damage which is:
   a. either expected or intended by an insured person; or
   b. the result of a willful or malicious act by an insured person, or at the direction of an insured person;
   no matter at whom or at what the act was directed. However, this exclusion does not apply to bodily injury resulting from the use of reasonable force by an insured person to protect persons or property;
11. any liability assumed by an insured person under any contract or agreement;
12. bodily injury or property damage arising out of an accident or occurrence involving a vehicle while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles. However, this exclusion does not apply to you, a relative, or an agent or employee of you or a relative, when using a covered vehicle;
13. bodily injury or property damage arising out of an accident or occurrence involving a vehicle while entrusted to a person or business for

PROG 109

63

the purpose of selling, renting or brokering the sale of the vehicle. However, this exclusion does not apply to you or a relative when using a **covered vehicle**;

14. **bodily injury** or **property damage** while the **covered vehicle** is rented or leased to others;

15. any obligation for which the United States Government is liable under the Federal Tort Claims Act;

16. **bodily injury** or **property damage** that arises out of the transmission of a communicable disease, bacterium, parasite, virus, or other organism, caused wholly or in part by the actions of an **insured person**;

17. **bodily injury** due to any of the following diseases transmitted wholly or in part by the actions of an **insured person**:
    a. Acquired Immune Deficiency Syndrome (AIDS);
    b. AIDS Related Complex (ARC);
    c. Human Immunodeficiency Virus (HIV); or
    d. any resulting or related symptoms, effects, conditions, diseases, or illnesses;

18. **bodily injury** or **property damage** that arises out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of pollutants;

19. **bodily injury** or **property damage** arising out of any loss, cost, or expense relating to pollutant testing, monitoring, cleanup, removal, containment, treatment, detoxification, neutralization, remediation or in any way responding to or assessing the effects of pollutants, as the result of:
    a. any governmental directive or request; or
    b. any claim or lawsuit by or on behalf of a governmental authority;

20. **bodily injury** or **property damage** arising out of sexual molestation, sexual harassment, corporal punishment, or physical or mental abuse;

21. **bodily injury** or **property damage** resulting from any criminal act committed by or with the knowledge or consent of an **insured person**;

22. **bodily injury** or **property damage** arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s), as defined by the Federal Food and Drug Law, 21 U.S.C.A. Sections 811 and 812. Controlled Substances include, but are not

limited to, cocaine, LSD, marijuana and all narcotic drugs. This exclusion does not apply to the use of prescription drugs by a person following the orders of a licensed physician;

23. **bodily injury** or **property damage** if the initial injurious act was committed prior to the effective date of your policy;

24. **bodily injury** or **property damage** arising out of the use of a **covered vehicle** for transportation or travel on public roads;

25. **bodily injury** to an **insured person**;

26. any fines or penalties; or

27. **bodily injury** or **property damage** arising out of the actual, alleged, or threatened migration, release, existence, or presence of or actual, alleged, or threatened exposure to any of the following:
    a. mold, mildew or fungus, including any type or form of:
        (i) decomposing or disintegrating organic material or microorganism;
        (ii) organic surface growth on moist, damp, or decaying matter;
        (iii) yeast or spore-bearing plant-like organism; or
        (iv) spores, scents, toxins, bacteria, viruses, or any other by-products produced or released by any mold, mildew, fungus, or other microbe;
    b. wet or dry rot;
    c. rust; or
    d. dampness of atmosphere, extremes of temperature, or deterioration.
    However, this exclusion does not apply to property damage if such loss is caused by any other loss covered under this Part VIII.

## LIMITS OF LIABILITY

The limit of liability shown on the **Declarations Page** is the most we will pay for any one **accident** or **occurrence** regardless of the number of:
1. claims made;
2. **covered vehicles**;
3. **insured persons**;
4. lawsuits brought;
5. vehicles involved in an **accident** or **occurrence**; or
6. premiums paid.

The amount shown on the Declarations Page is the most we will pay under this Part VIII for the total of all damages resulting from any one accident.

No one will be entitled to duplicate payments for the same elements of damages.

**OTHER INSURANCE**          PROG 112

No coverage is provided under this Part VIII for bodily injury or property damage covered under any other coverage provided under the terms of this policy.

Any insurance we provide under this Part VIII is excess over any other applicable or collectible insurance or bond. If there is other excess insurance or bond, we will pay only our share of the damages. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

**PART IX - SCHEDULED MEDICAL BENEFITS - VACATION RESIDENCE COVERAGE**

**INSURING AGREEMENT**

Subject to the Schedule of Benefits, if you pay the premium for Scheduled Medical Benefits - Vacation Residence Coverage, we will pay for a qualified bodily injury:
1. sustained by you; and
2. caused by an accident while using a covered vehicle as a residence;

if you seek treatment for the qualified bodily injury within one hundred and eighty (180) days of the accident.

**ADDITIONAL DEFINITIONS**

When used in this Part IX, whether in the singular, plural, or possessive:
1. "Loss of ability to work" means that you have been unable to work for twelve (12) consecutive months after the date you sustained a qualified bodily injury, in a profession, business or occupation for which you are qualified and capable of performing by virtue of your education, vocational training, and experience. Loss of ability to work coverage applies only to you.

2. "Loss of eye" means the irreversible loss of the entire sight of your eye.
3. "Loss of foot" means complete severance through or above your ankle joint.
4. "Loss of hand" means complete severance through or above your wrist.
5. "Qualified bodily injury" means physical injury, including death that results from physical injury, which is caused by an accident and which is of a type listed on the Schedule of Benefits below.

**EXCLUSIONS - READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART IX.**

Coverage under this Part IX does not apply to a qualified bodily injury:
1. which is self-inflicted;
2. which results from your illegal activity;
3. due to war, or hostile or war-like action in time of peace or war, whether declared or undeclared;
4. due to nuclear action which means a nuclear reaction, radiation or radioactive contamination;
5. arising while a covered vehicle is being operated on public roads; or
6. arising out of the use of a covered vehicle in connection with your business.

**SCHEDULE OF BENEFITS**

| Qualified Bodily Injury | Limits of Liability | | |
| --- | --- | --- | --- |
| | Named Insured | Named Insured & Spouse | Spouse |
| Loss of life | $35,000 | | $10,000 |
| Loss of both hands or both feet | | | |
| Loss of one hand and one foot | $10,000 | | $10,000 |
| Loss of both eyes | $10,000 | | |
| Loss of one eye and one hand or one foot | | $10,000 | |
| Loss of one hand or one foot | $5,000 | | $5,000 |
| Loss of one eye | | | $10,000 |
| Loss of ability to work | | | |

PROG 113

This coverage is limited as follows:

1. The most we will pay for Loss of Life of both the named insured and the named insured's spouse is $45,000.
2. If more than one **qualified bodily injury** is sustained by the named insured or by the spouse of the named insured in one accident, the most we will pay for that person's **qualified bodily injuries**, other than Loss of Life, is $10,000.
3. If Loss of Life benefits are claimed with respect to an individual, no claim can be made under Scheduled Medical Benefits - Vacation Residence Coverage for another **qualified bodily injury** to that individual if the Loss of Life and the other **qualified bodily injury** were caused by the same accident.

The Limits of Liability shown above are the most we will pay for any one accident, regardless of the number of:

1. claims made;
2. **covered vehicles**;
3. insured persons;
4. lawsuits brought;
5. vehicles involved in an accident; or
6. premiums paid.

## GENERAL PROVISIONS

### POLICY PERIOD AND TERRITORY

This policy, applies only to **accidents and losses** occurring during the policy period shown on the **Declarations Page** and which occur within any state, territory, or possession of the United States of America, or any province or territory of Canada, or while a **covered vehicle**, **non-owned vehicle**, or trailer is being transported between their ports. If the Mexico Coverage provision extends Comprehensive Coverage or Collision Coverage to a loss, the Mexico Coverage provision shall extend to Mexico and transportation territory shall extend to Mexico and transportation between its ports, but only to the extent described under Part IV - Damage To A Vehicle.

### POLICY CHANGES      PROG 114

This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the

**Declarations Page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived, except by an endorsement issued by **us**.

The premium for each vehicle is based on information we have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, we may adjust **your** premium during the policy period, or take other appropriate action. To properly insure **your vehicle**, you must promptly notify us when:

1. you change **your** address;
2. any resident operators are added or deleted; or
3. you acquire an additional or replacement vehicle.

Changes that may result in a premium adjustment are contained in **our** rates and rules. These include, but are not limited to, **you** or a relative obtaining a driver's license or operator's permit, or changes in:

1. the number, type, or use classification of **covered vehicles**;
2. operators using **covered vehicles**;
3. an operator's marital status;
4. the place of principal garaging of any **covered vehicle**;
5. coverage, deductibles, or limits of liability; or
6. rating territory or discount eligibility.

### TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform with the legal requirements of the state listed on **your** application as **your** residence, the provision shall be deemed amended to conform with such legal requirements. All other provisions of this policy shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** residence.

PROG 115

## TRANSFER

This policy may not be transferred to another person without **our** written consent. If a named insured dies, this policy will provide coverage until the end of the policy period for the legal representative of the named insured, while acting as such, and for persons covered under this policy on the date of the named insured's death.

## FRAUD OR MISREPRESENTATION

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy if **you** or an insured person:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;

2. concealed or misrepresented any material fact or circumstance; or

3. engaged in fraudulent conduct;

at the time of application. **We** may void this policy due to fraud, misrepresentation, or an incorrect statement of a material fact in the application, even after the occurrence of an **accident** or **loss**. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

However, if **we** have certified this policy as proof of financial responsibility and **we** void this policy, this shall not affect coverage under Part I - Liability To Others of this policy up to the minimum limits required by the financial responsibility law of the state shown on **your** application as **your** residence for an **accident** that occurs before **we** notify the named insured that the policy is void. No payment will be made to any person who engages in fraudulent conduct. If **we** void this policy, **you** must reimburse **us** if **we** make a payment.

**We** may deny coverage for an **accident** or **loss** if **you** or an insured person have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## PAYMENT OF PREMIUM    PROG 116

If **your** initial premium payment is by check, draft, or

any remittance other than cash, coverage under this policy is conditioned upon the check, draft, or remittance being honored upon presentment to the bank or other financial institution. If the check, draft, or remittance is not honored upon presentment, this policy may, at **our** option, be deemed void from its inception. This means that **we** will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

A charge may be added to **your** account if:

1. **you** tender a check, draft, or any remittance other than cash to **us** for any full or partial payment of **your** premium, other than **your** initial payment, and the check, draft, or remittance is returned to **us** or refused because of insufficient funds, a closed account, or a stop payment order; or

2. **your** premium payment is received after the due date but prior to the effective date of cancelation of this policy for nonpayment of premium.

## CANCELLATION    PROG 117

**You** may cancel this policy by calling, writing, or sending an electronic communication to **us**, and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **Declarations Page** at the last known address appearing in **our** records. If **we** cancel this policy during the first fifty-nine (59) days of the initial policy period, or if **we** cancel this policy at any time due to nonpayment of premium, notice of cancellation will be mailed at least ten (10) days before the effective date of cancellation. After this policy has been in effect for fifty-nine (59) days, notice of cancellation due to any reason other than nonpayment of premium will be mailed at least twenty (20) days before the effective date of cancellation.

**We** may cancel this policy for any reason within the first fifty-nine (59) days of the initial policy period.

After this policy is in effect for more than fifty-nine

70

71

(59) days, or if this is a renewal or continuation policy, we may only cancel for one or more of the following reasons:

1. you do not pay the required premium for this policy when due;
2. misrepresentation by you of any material fact in the procurement or renewal of this policy;
3. any insured person violated any of the terms or conditions of this policy;
4. any insured person has made a false or fraudulent claim or knowingly aided or abetted another in the presentation of such a claim;
5. the person shown as the named insured on the Declarations Page:
   a. failed to fully disclose the named insured's motor vehicle accidents and moving traffic violations for the preceding thirty-six (36) months if called for in the application; or
   b. failed to disclose any information necessary for the acceptance or proper rating of the risk in the application or in response to an inquiry by us, any of our agents or the named insured's broker;
6. the person shown as the named insured on the Declarations Page, or any other operator who either resides in the same household or who customarily operates a covered vehicle:
   a. has, within the thirty-six (36) months prior to the notice of cancellation, had his or her driver's license under suspension or revocation;
   b. is, or becomes, subject to epilepsy or heart attacks, and does not produce a certificate from a physician testifying to such person's unqualified ability to operate a motor vehicle safely;
   c. has an accident record, conviction record (criminal or traffic), or physical, mental, or other condition, which is such that the person's operation of an automobile might endanger public safety;
   d. has, within the thirty-six (36) months prior to the notice of cancellation, been addicted to the use of narcotics or other drugs;
   e. uses alcoholic beverages to excess;
   f. has, within the thirty-six (36) months immediately preceding the notice of cancellation,

PROG 118

72

been convicted of or forfeited bail for:
(i) any felony;
(ii) criminal negligence resulting in death, homicide or assault arising out of the operation of a motor vehicle;
(iii) operating a motor vehicle while intoxicated or under the influence of drugs;
(iv) being intoxicated while occupying or while having custody of an automobile;
(v) leaving the scene of an accident without stopping to report;
(vi) theft or unlawful taking of an automobile;
(vii) making false statements in an application for a driver's license; or
(viii) three or more violations of:
   (a) any law, ordinance or regulation limiting the speed of motor vehicles; or
   (b) any of the provisions of the motor vehicle laws of any state, the violation of which constitutes a misdemeanor, whether or not the violations were different offenses or repetitions of the same offense;

7. a covered vehicle is:
   a. so mechanically defective that its operation might endanger public safety;
   b. used to carry passengers for compensation or a fee. This does not apply to shared-expense car pools;
   c. used in the business of transporting flammables or explosives;
   d. an authorized emergency vehicle;
   e. changed in shape or condition during the policy period so as to substantially increase the risk; or
   f. subject to an inspection law and has not been inspected or has failed inspection; or
8. any other reason specified by law.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all vehicles.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

PROG 119

73

## CANCELLATION REFUND

Upon cancellation, you may be entitled to a premium refund. However, our making or offering of a refund is not a condition of cancellation.

A minimum earned premium of $50 shall apply if this policy is canceled at your request or canceled due to nonpayment of premium. This amount will not be refunded to you.

If we cancel this policy for a reason other than nonpayment of premium, any refund due will be computed on a daily pro rata basis.

If cancellation is at your request, or if cancellation is for nonpayment of premium, any refund due will be computed on a ninety percent (90%) of a daily pro-rata basis, and subject to the minimum earned premium. Earned premium is calculated on a daily basis. We will supply a copy of the table to you on request.

PROG 120

## NONRENEWAL

We may decide not to renew this policy for any reason other than for a not-at-fault claim submitted by the insured person. If we decide not to renew or continue this policy, we will mail notice of nonrenewal to the named insured shown on the Declarations Page at the last known address appearing in our records.

## PROOF OF NOTICE

Proof of mailing of any notice will be sufficient proof of notice.

## AUTOMATIC TERMINATION

Coverage for a covered vehicle shall terminate automatically when a person other than you or a relative becomes the owner of the vehicle.

## COVERAGE CHANGES

If we make a change which broadens a coverage you have under this edition of your policy, without additional charge, you will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in your state. This provision does not apply to a general program revision or our issuance of a subsequent edition of your policy. Otherwise, this policy can be changed only by endorsement issued by us.

74

## LEGAL ACTION AGAINST US

We may not be sued unless there is full compliance with all the terms of this policy. Any lawsuit against us by you, a relative, or any other insured person following an accident, or an alleged breach of our obligations under this policy, must be commenced within the time period set forth as the bodily injury statute of limitations in the laws of the state listed in our records as your principal address.

We may not be sued for payment under Part I – Liability To Others, Part VII – Full Timer's Package or Part VIII – Vacation Liability Coverage until the obligation of an insured person to pay is finally determined either by final judgment against that person or by written agreement of the insured person, the claimant, and us. No one will have any right to make us a party to a lawsuit to determine the liability of an insured person.

If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including evidence for any civil or criminal proceeding.

## OUR RIGHTS TO RECOVER PAYMENT

In the event of any payment under this policy, we are entitled to all the rights of recovery that the insured person to whom payment was made has against another. That insured person must sign and deliver to us any legal papers relating to that recovery, do whatever else is necessary to help us exercise those rights, and do nothing after an accident or loss to prejudice our rights.

Except for a loss to property that resulted from an intentional act of abuse by a named insured, we may not assert rights of recovery against any person who was using a covered vehicle with your express or

75

PROG 121

implied permission for any payment made under Part IV - Damage To A Vehicle.

If we have made a payment to a named insured for loss to property that resulted from an intentional act of abuse by another named insured, we may assert a right of reimbursement from the named insured whose intentional act caused the loss.

When an insured person has been paid by us under this policy and also recovers from another person, entity, or organization, the amount recovered will be held by the insured person in trust for us and reimbursed to us to the extent of our payment.

An insured person must notify us in writing at least thirty (30) days before entering into any settlement with the owner or operator of an uninsured motor vehicle, or that person's liability insurer. In order to preserve our right of subrogation, we may elect to pay any sum offered in settlement by, or on behalf of, the owner or operator of an uninsured motor vehicle. If we do this, you agree to assign to us all rights that you have against the owner or operator of an uninsured motor vehicle.

If recovery is made by an insured person under this policy from a responsible person, entity, or organization without our written consent, the insured person's right to payment under any affected coverage will no longer exist.

If we elect to exercise our rights of recovery against a responsible person, entity, or organization, you authorize us, at our option, to recover any deductible incurred by you for property damage covered by this policy. We have no obligation to seek repayment of the deductible if we pursue recovery through Inter-company Arbitration. We have no obligation to pursue recovery against a responsible person, entity, or organization for anything other than the deductible incurred by you and the amount we have paid for property damage. If you or an insured person have other claims to pursue against the responsible person, entity or organization for recovery of damages not paid by us, then:

1. a separate or independent legal action may be filed by you or that insured person; or

76   PROG 122

2. the claims may be joined with our action if that person notifies us and secures separate counsel to protect those other interests.

We reserve the right to compromise or settle the deductible and property damage claims against the liable parties for less than the full amount. We reserve the right to incur reasonable expenses and attorney fees in pursuit of the recovery. You are entitled to reimbursement of your proportionate share of any recovery, subject to a reduction for your proportionate share of expenses and attorney fees incurred in connection with these collection efforts.

OUR RIGHTS TO INSPECT

We, and any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf, have the right to:

1. make inspections and surveys after providing you with reasonable notice;
2. provide you reports related to any conditions that we identify with respect to a covered vehicle or property; and
3. recommend changes with respect to any identified conditions.

This does not mean that we or any entity acting on our behalf:

1. make safety inspections;
2. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;
3. warrant or represent that conditions are safe or healthful; or
4. warrant or represent that conditions comply with laws, regulations, codes or standards.

JOINT AND INDIVIDUAL INTERESTS

If there is more than one named insured on this policy, any named insured may cancel or change this policy. The action of one named insured shall be binding on all persons provided coverage under this policy.

PROG 123

77

## BANKRUPTCY

The bankruptcy or insolvency of an insured person will not relieve us of any obligations under this policy. If execution of a judgment against an insured person is returned unsatisfied because of the bankruptcy or insolvency of an insured person, a person claiming damages under Part I - Liability To Others may maintain an action against us for the amount of the judgment, subject to the terms and conditions of this policy and not exceeding our Limits of Liability under Part I.

PROG 124

78