IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LENZIE GILL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 2:06-cv-1151-MEF |
| ) | |
| PROGRESSIVE DIRECT INSURANCE ) | (WO) |
| CO., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Liability and Partial Damages (Doc. # 6), filed April 30, 2007, Defendant's Motion for Summary Judgment (Doc. # 13), filed May 16, 2007, and Plaintiff's Motions to Strike (Doc. ## 12, 22), filed May 16, 2007 and June 4, 2007. Plaintiff Lenzie Gill ("Gill") is suing Progressive Direct Insurance Company ("Progressive") for breach of contract and bad faith for damages arising out of Progressive's alleged failure to pay a claim on an insurance policy owned by Gill. The Court has reviewed the submissions of the parties and carefully considered the arguments in support of and in opposition to the Motions. For the reasons stated herein, Gill's Motion for Partial Summary Judgment is due to be DENIED, Progressive's Motion for Summary Judgment is due to be GRANTED, and Gill's Motions to Strike are due to be DENIED as moot.

**I.  JURISDICTION AND VENUE**

The Court exercises subject matter jurisdiction over Plaintiff's claims pursuant to 28

U.S.C. § 1332 (diversity).  This Court finds complete diversity among the parties, and the citizenship of the parties is not in dispute.  The parties contest neither personal jurisdiction nor venue, and the Court finds an adequate factual basis for each.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments,* 94 F.3d 1489, 1496 (11th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.,* 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami,* 52 F.3d 918, 921 (11th Cir. 1995) (internal quotation marks and citations omitted)).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

### III.  FACTS AND PROCEDURAL HISTORY

The Court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to all pending motions.  The submissions of the parties, viewed in the light most favorable to the non-moving parties, establish the following relevant facts:

On October 27, 2006, the awning on Gill's motor home was damaged by bad weather. At the time of the damage, Gill's motor home was covered by an Alabama Motor Home Policy of Insurance issued by Progressive, which provided comprehensive coverage for "Agreed Value $16,500" with a deductible of $500.00.  Gill notified Progressive of the damage to his awning on October 28, 2006.  Progressive inspected the motor home on October 30, 2006.

Progressive determined that the replacement cost of the awning, including parts and labor, was $927.80.  However, Progressive calculated a reduction in the value of the claim for "Betterment" for an amount of $575.85.  The term "Betterment" essentially means a reduction in the value due to the physical condition prior to the loss, for example wear and tear.  This meant that the adjusted value of the claim was only $351.95.  Since this amount was less than the deductible on the policy ($500), Progressive paid no money on the claim.

Gill filed this action in the Circuit Court of Montgomery County, Alabama on December 1, 2006.  Gill asserts claims for breach of contract and bad faith.  Gill seeks damages for the wrongful denial of his claim, mental anguish, and punitive damages. Progressive filed a Notice of Removal in this Court on December 22, 2006.

## IV.  DISCUSSION

**A.    Breach of Contract**

In order to establish a breach of contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) the plaintiff's own performance under the contract, (3) the defendant's nonperformance, and (4) damages.  *Ex parte Alfa Mut. Ins. Co.*, 799 So. 2d 957, 962 (Ala. 2001).

Gill claims that Progressive's deduction of Betterment from the value of his claim was not authorized by his insurance policy.  Subsection 4 of the "Limits of Liability" section of his Comprehensive Coverage policy states:

> 4.  Payments for loss covered under this Part IV are subject to the following provisions:
> . . .
> c.  an adjustment for physical condition, which may also be referred to as betterment, wear and tear, or prior damage, will be made in determining the Limits of Liability.  However, this shall not apply to a total loss if the covered vehicle is covered by Total Loss Replacement/Purchase Price Coverage or Agreed Value Coverage

Def. Ex. B (Doc. # 15-4), at 26.  Accordingly, the policy provides for a reduction in value due to betterment, so long as the claims is not for a "total loss".  The Comprehensive Coverage policy defines "total loss" as:

> a.  the theft of the vehicle if the vehicle is not recovered within thirty (30) days; or
> b.  any other loss to the vehicle that is payable under this Part IV if the actual cash value of the vehicle at the time of the loss, when reduced by the salvage value after the loss, is less than the anticipated costs if the vehicle is repaired (including parts and labor).

5

Def. Ex. B (Doc. # 15-4), at 21. Since the claim in dispute was not a claim for theft, subparagraph (a) does not apply. Moreover, subparagraph (b) does not apply either since the Agreed Value of the motor home was $16,500 and the anticipated cost of repair was only $927.80. Consequently, subsection 4.c of the Limits of Liability section does apply and Progressive was entitled to deduct wear and tear from the value of the awning.

Gill argues that subsection 4.c is inapplicable due to subsection 3. That subsection states:

> 3. If you purchase Agreed Value Coverage, then subsection 1 above shall not apply and the limit of liability for Agreed Value Coverage shall apply.

Def. Ex. B (Doc. # 15-4), at 26. While Gill did purchase Agreed Value coverage, this subsection does not say that subsection 4 does not apply—it only says that subsection 1 does not apply. In other words, whether or not Gill owns Agreed Value coverage, subsection 4 would still apply.

Nevertheless, looking to the "limit of liability for Agreed Value Coverage" as referenced in subsection 3, above, that provision states in relevant part:

> If you purchase Agreed Value Coverage under this Part IV for a covered vehicle, then subsection 1 of the Limits of Liability provision under this Part IV shall not apply and the following provision shall apply to a loss to that covered vehicle:
> 1. The limit of liability for a loss to a covered vehicle for which Agreed Value Coverage was purchased is as follows:
>    a. for a total loss to a covered vehicle which has an agreed value supported by the proper documentation, our limit of liability is the agreed value, reduced by its salvage value if you or the owner retain the salvage; and
>    b. for a loss other than a total loss to a covered

6

>> vehicle, or for a total loss where the agreed value is not supported by proper documentation, our limit of liability is the *lower* of:
> (i) the *actual cash value* of the stolen or damaged property at the time of the loss, reduced by:
>> (a) the applicable deductible as shown on the Declarations Page; and
>> (b) its salvage value if you or the owner retain the salvage;
> (ii) the amount necessary to replace the stolen or damaged property, reduced by:
>> (a) the applicable deductible as shown on the Declarations Page; and
>> (b) its salvage value if you or the owner retain the salvage . . . .

Def. Ex. B (Doc. # 15-4), at 28-29 (emphasis added). Because the loss was not a total loss, subsection 1.a does not apply. Subsection 1.b clearly states that the *lowest* option applies. Gill argues that subsection 1.b.(ii) should apply, which would require Progressive to pay the full $927.80, less the $500 deductible, but with no deduction for betterment. However, because 1.b clearly states that the *lowest* measure of damages is to apply, subsection 1.b.(i) is applicable because the "actual cash value" of the awning in this case is lower than the replacement value. While the policy does not define "actual cash value", it is apparent (particularly in light of subsection 4.c discussed above) that "actual cash value" would include an adjustment for the actual physical condition, and would not be merely equivalent to its replacement value as argued by Gill.

Consequently, no reasonable jury could find that Progressive failed to perform under the contract. Therefore, Progressive is entitled to summary judgment on Gill's breach of contract claim.

7

**B.      Bad Faith**

Gill further claims that in denying his claim, Progressive acted in bad faith. In order to establish a prima facie case of bad faith refusal to pay an insurance claim under Alabama law, a plaintiff must show that the insurer's decision not to pay was "without any ground for dispute" and that "the insurer had no legal or factual defense to the claim." *Shelter Mut. Ins. Co. v. Barton*, 822 So. 2d 1149, 1154 (Ala. 2001). The plaintiff thus bears a "heavy burden," and a finding of bad faith based upon rejection of an insurer's legal argument should be reserved for "extreme cases." *Id.*

Accordingly, because this Court has found that Progressive is entitled to summary judgment on the breach of contract claim, it is also entitled to summary judgment on the bad faith claim. *Id.* at 1155 ("For a 'normal' bad-faith claim to be submitted to the jury, the underlying contract claim must be so strong that the plaintiff would be entitled to a preverdict judgment as a matter of law."); *see also Morton v. Allstate Ins. Co.*, 486 So. 2d 1263, 1268 (Ala. 1986) ("We have held that in the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim and thus entitled to recover as a matter of law." (internal quotation marks omitted)).

**C.      Motions to Strike**

Gill filed two motions to strike, each of which sought to strike certain evidence submitted by Progressive, which Gill alleges is inadmissible pursuant to Fed. R. Evid. 408 as evidence of offers to compromise. Because none of the evidence Gill seeks to strike had any bearing on this Court's decision in this case, these motions will be DENIED as moot.

8

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that

(1)  Plaintiff's Motion for Partial Summary Judgment (Doc. # 6) is DENIED.

(2)  Defendant's Motion for Summary Judgment (Doc # 13) is GRANTED.

(3)  Plaintiff's Motions to Strike (Doc. ## 12, 22) are DENIED as moot.

(4)  All claims and this case are DISMISSED WITH PREJUDICE.

(5)  The pretrial and the trial scheduled in this matter are CANCELLED.

This Court will enter a separate final judgment taxing costs.

DONE this the 10th day of January, 2008.

                                              /s/ Mark E. Fuller
                                 CHIEF UNITED STATES DISTRICT JUDGE